[Cite as *State v. Sullivan*, 2017-Ohio-8937.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      CASE NO. 5-17-09

    PLAINTIFF-APPELLEE,

    v.

WILLIAM E. SULLIVAN, JR.,      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Findlay Municipal Court
Trial Court No. 16TRC05077

**Judgment Affirmed**

**Date of Decision: December 11, 2017**

APPEARANCES:

    *Mark A. Davis* **for Appellant**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant William E. Sullivan, Jr. ("Sullivan") appeals the judgment of the Municipal Court of Findlay, Ohio, alleging that (1) the trial court erred in denying his motion to suppress the results of his Horizontal Gaze Nystagmus Test ("HGN Test"); (2) the trial court erred in denying his Crim.R. 29 motion for acquittal; (3) the trial court erred by overruling his objections to the admission of testimony that referenced research discussing the accuracy of the HGN Test; and (4) the jury returned a verdict that was against the manifest weight of the evidence. For the reasons set forth below, the judgment of the lower court is affirmed.

*Facts and Procedural History*

{¶2} Officer Michael Cortez ("Cortez") is a deputy sheriff at the Hancock County Sheriff's Office. Trial Tr. at 29. At 9:11 p.m. on May 20, 2016, Cortez was on patrol when he received a dispatch that reported a single vehicle, non-injury accident had occurred in his vicinity. *Id*. at 42-43. When he arrived at the scene of the accident, he saw Sullivan's vehicle up against a utility pole in a ditch. *Id*. at 43-44. The utility pole was cracked about fifteen to twenty feet above the ground. *Id*. Cortez determined that Sullivan—the driver of the vehicle—had driven through a stop sign, lost control of his vehicle, and hit the utility pole. *Id*. at 53.

{¶3} The fire department had already arrived at the scene of the accident, and Sullivan was standing about fifty to seventy-five feet away from his car. *Id*. at 44-45. Cortez approached Sullivan and began asking him some questions. *Id*. at 46. Cortez noticed that Sullivan was slow in responding to these questions and seemed lethargic. *Id*. No injuries were apparent to Cortez from Sullivan's appearance. *Id*. at 47-48. Cortez asked Sullivan if he needed any medical attention or if he had any injuries. *Id*. at 47. In response, Sullivan indicated that he was not injured. *Id*. Cortez and Sullivan then went into Cortez's cruiser to complete the report. *Id*. at 51. Cortez noticed that Sullivan took very deliberate and focused actions as he moved towards the cruiser. *Id*. at 51. Cortez also noticed that Sullivan, struggling to keep his balance, stumbled as he walked and stabilized himself by holding onto the cruiser. *Id*. at 52.

{¶4} When Cortez got into the cruiser with Sullivan, he smelled "a strong odor of an alcoholic beverage." *Id*. at 53. In the light of the cruiser, he could also see that Sullivan's eyes were bloodshot and his face was flushed. *Id*. Cortez then asked Sullivan questions about the route on which Sullivan was driving. *Id*. at 54. Sullivan responded by claiming that he was on Interstate 280 by Toledo. *Id*. In fact, Sullivan and Cortez were at the intersection of State Route 613 and Township Road 136, which was at least forty-five minutes away from where he believed he was on Interstate 280. *Id*. at 55. When asked, Sullivan denied having any alcoholic beverages that evening. *Id*.

{¶5} At this point, Cortez asked Sullivan to submit to a portable breath test. *Id*. at 56. Sullivan declined to take the portable breath test but subsequently agreed to submit to field sobriety tests. *Id*. Cortez then administered the HGN Test. *Id*. As Cortez administered the HGN Test, he observed six out of the six clues that are indicators of being under the influence in Sullivan's eyes. *Id*. at 69-70. Doc. 12. Since the weather outside was becoming inclement, Cortez decided not to proceed with further field sobriety tests. Trial Tr. 90. On the basis of the HGN Test results and his other observations, Cortez arrested Sullivan for operating a vehicle while under the influence. Doc. 1. The complaint was then filed on May 24, 2016. Doc. 1.

{¶6} On July 25, 2016, Sullivan filed a motion to suppress the results of the HGN Test. Doc. 8. At the suppression hearing on October 12, 2014, Cortez testified as to his observations on the night of May 20, 2016. Suppression Hearing Tr. 11. The Defense then called Dr. William R. Bauer ("Dr. Bauer") as an expert witness. *Id*. at 47. Dr. Bauer, a neurologist, testified that he believed that Sullivan had a traumatic brain injury as the result of the car accident. *Id*. at 55. He further testified that he believed the six clues that Cortez observed during the HGN Test were symptoms of Sullivan's traumatic brain injury and were not indicators of intoxication. *Id*. at 51-52, 55. He also believed that the flushed face, lethargic movements, slow responses to questions, and glassy eyes were the result of the traumatic brain injury caused by the accident. *Id*. at 56-58. Dr. Bauer's conclusions

on Sullivan's conditions were based solely on a telephone conversation with Sullivan that occurred on August 14, 2016. *Id*. at 53. On cross examination, Dr. Bauer admitted that he had not seen Sullivan in person until the hearing, had no consultations with Sullivan prior to their conversation on August 14, 2016, and was not involved in any treatments for Sullivan's alleged traumatic brain injury. *Id*. at 59-60, 61-62. The Defense did not present any evidence to corroborate the opinions of its expert witness. On December 28, 2016, the trial court overruled Sullivan's motion to suppress the results of the HGN Test. Doc. 12.

{¶7} This case proceeded to trial on April 20, 2017. Trial Tr. 1. At trial, Cortez testified about his experience in law enforcement and his observations on the night that he cited Sullivan for operating a vehicle while under the influence. *Id*. at 29. He testified that he, in his twenty-three-year long career in law enforcement, had made over four hundred OVI arrests. *Id*. at 29, 41. He also stated that he has been an instructor who trains law enforcement officers on how to administer the HGN Test for the last fifteen years. *Id*. at 36. After explaining the workings of the HGN Test, he testified that he had observed six out of six clues in Sullivan's eyes. *Id*. at 58-65, 69. During this portion of his testimony, the following exchange took place between the prosecutor and Cortez:

> **[Prosecutor]: What if anything did [seeing six of six clues] mean to you?**
>
> **[Cortez]: That means to me that according to the research that was conducted—**

[Defense Counsel]:  Objection.

The Court: Overruled.

[Cortez]: —according to the research that was conducted that is provided to us through our training that—the original research was done by the Southern California Research Institute, contracted by the National Highway Traffic Safety Administration.  That began in 1975.  In 1977 they did a field study only in California and again in 1977 they did another field and laboratory study and again in 1983 they did one in North Carolina, Maryland, Washington D.C., and Virginia and as a result of those particular—

[Defense Counsel]:  Objection, your honor, this is hearsay testimony.

The Court: The question was what did the observations of the six clues mean to the officer.

[Cortez]: I'm just trying to explain so the jury understands.

The Court: Without getting into the several research matters that aren't before the court.

[Prosecutor]:  Okay.

The Court:  If you want to take him back to the basis of the training * * *.

[Prosecutor]:  I'll ask a question to help get all of that aside, what do these results of Mr. Sullivan indicate to you?

[Cortez]:  To simply put it, they did research and they found that when these four clues are—

[Defense Counsel]:  Objection.

The Court:  Sustained.

> **[Prosecutor]:** Just if you can, Sergeant Cortez, so having observed those six clues, three in each eye what did that mean to you about Mr. Sullivan on May 20, 2016?
>
> **[Cortez]:** That there was alcohol and/or drugs of abuse.
>
> **[Prosecutor]:** Where?
>
> **[Cortez]:** In his system.

*Id*. at 68-69. On appeal, Sullivan asserts that the State—through this exchange—improperly bolstered Cortez's testimony regarding the HGN Test results with inadmissible hearsay evidence. After Cortez's testimony, the State rested. Defense counsel then made a Crim.R. 29 motion, arguing that the State did not prove that Sullivan had consumed alcohol and, therefore, did not prove that Sullivan had alcohol in his system on the night of the alleged offense. *Id*. at 103. The trial court overruled Sullivan's Crim.R. 29 motion. *Id*. at 106.

{¶8} During the Defense's case-in-chief, Sullivan again called Dr. Bauer as an expert witness. *Id*. at 109. During his testimony, Dr. Bauer again stated his belief that Sullivan had suffered a traumatic brain injury; that the indictors of intoxication observed by Cortez were actually symptoms of this injury; and that the HGN Test results were not reliable under these circumstances. *Id*. at 121, 123, 125-126. On cross examination, Dr. Bauer admitted that he had never performed a physical examination of Sullivan and had not viewed Sullivan's medical history records. *Id*. at 136. Dr. Bauer also admitted that his consultation was over the phone; that this consultation occurred three months after the accident on May 20, 2016; that he had

never talked with Sullivan in person outside of the courtroom; and that he had not been involved in any treatments for this alleged traumatic brain injury. *Id*. at 136, 145. The jury found Sullivan guilty of violating R.C. 4511.19(A)(1)(a) on April 20, 2017. Doc. 34. Sullivan was sentenced at that time. Doc. 22-23.

**{¶9}** Sullivan filed notice of appeal on April 21, 2017. Doc. 27. On appeal, he raises four assignments of error, which read as follows:

### First Assignment of Error

**The trial court erred by denying the motion to suppress the HGN Test.**

### Second Assignment of Error

**The trial court erred by denying defendant's Rule 29 motion.**

### Third Assignment of Error

**The trial court erred in overruling objections relating to HGN research.**

### Fourth Assignment of Error

**The guilty jury verdict was against the manifest weight of the evidence.**

We will consider the first and third assignments of error before considering the second and fourth assignments of error.

### *First Assignment of Error*

**{¶10}** In his first assignment of error, Sullivan argues that the trial court erred in denying his motion to suppress the HGN Test. In this case, Sullivan was in an

accident prior to having the HGN Test administered.  At the suppression hearing, his expert witness stated that Sullivan had a head injury as the result of the accident and determined that the HGN Test was not valid under these circumstances. Sullivan argues that the trial court considered the training of Cortez but failed to examine whether the physical condition of the defendant invalidated the HGN Test. On these grounds, Sullivan contends that the HGN Test should have been excluded since his physical condition made the HGN Test invalid.

Legal Standard

{¶11} Under appellate review, motions to suppress present "mixed questions of law and fact."  *State v. Yeaples*, 180 Ohio App.3d 720, 2009-Ohio-184, 907 N.E.2d 333, ¶ 20 (3d Dist.).

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.**

(Citations omitted.)  *State v. James*, 2016-Ohio-7262, 71 N.E.3d 1257, ¶ 8 (3d Dist.), quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶12} R.C. 4511.19(D)(4)(b) governs the admissibility of field sobriety tests and reads, in its relevant part, as follows:

**In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:**

**(i) The officer may testify concerning the results of the field sobriety test so administered.**

**(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.**

**(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.**

R.C. 4511.19(D)(4)(b).

**Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.**

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, at paragraph three of the syllabus (1954).

{¶13} If a motion to suppress challenges the admission of the results of field sobriety tests in an OVI case,

**the state must show the requisite level of compliance with accepted testing standards. Typically, the standards used are those from the [National Highway Traffic Safety Administration ("NHTSA")]. Part of the state's burden 'includes demonstrating what the NHTSA requirements are, through competent testimony and/or introducing the applicable portions of the NHTSA manual.' HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test.**

(Citations omitted.)  *State v. Loveridge*, 3d Dist. Marion No. 9-06-46, 2007-Ohio-4493, ¶ 11.

Legal Analysis

**{¶14}** In this case, Cortez testified at the suppression hearing about the process of administering the HGN Test to Sullivan.  Suppression Hearing Tr. 25-28.  Cortez discussed his experience in administering the HGN Test.  *Id*. at 29-31.  He received his instruction on this field test from the Ohio Peace Officers Training Academy, which hosted a program conducted by NHTSA.  *Id*. at 25.  He also stated that he is an instructor of this technique and has trained law enforcement officers across northwest Ohio on how to administer the HGN Test properly.  *Id*. at 25-26.  He then explained the NHTSA guidelines for the HGN Test and detailed the process of administering this field sobriety test.  *Id*. at 26-28.  After discussing how the HGN Test was performed, he testified as to how he conformed to these standards as he administered this test with Sullivan.  *Id*. at 29-31.  He further discussed the observations he made while Sullivan took the HGN Test.  In this process, Cortez

testified that he saw six of six clues in Sullivan's eyes. *Id.* at 31. Thus, through Cortez's testimony, the State demonstrated the requisite level of compliance that is required for the admissibility of the HGN Test.

{¶15} In response, the Defense called Dr. Bauer as its witness at the suppression hearing. *Id.* at 47. Dr. Bauer was a neurologist who testified as an expert witness. *Id.* Dr. Bauer testified that he believed that the indicators of intoxication that Cortez observed during the HGN Test were actually symptoms of a traumatic brain injury. *Id.* at 55. The Defense argued in its motion to suppress that Cortez's testimony as to the results of the HGN Test should be suppressed because Cortez was not able to give a medical diagnosis of Sullivan's condition and could not, therefore, determine whether Sullivan was suffering from a traumatic brain injury or was exhibiting symptoms of intoxication. Doc. 8.

{¶16} In its ruling on the Defense's motion to suppress, the trial court found that

> **[Cortez] testified he was familiar with the NHTSA requirements for administering the HGN and was certified to conduct this particular test. In addition, he has trained other deputies at the sheriff's office, as well as for other law enforcement agencies, on the administration of the HGN. The sergeant explained how the test was required to be administered and how he conducted the test with the defendant.**

Doc. 12. The trial court found that Dr. Bauer's testimony, on the other hand, was not persuasive. *Id.* Specifically, the trial court noted that Dr. Bauer had only spoken to Sullivan over the phone prior to his diagnosis; that Dr. Bauer did not review

Sullivan's medical history records; that Dr. Bauer did not examine Sullivan in person; that Dr. Bauer only considered Sullivan to be a patient "theoretically"; and that Dr. Bauer did not participate in any treatment of this alleged brain trauma. *Id.*

{¶17} The record shows that the State presented some information supporting all of the requirements of R.C. 4511.19(D)(4)(b) during the suppression hearing. Further, after considering all of the information from the hearing, the trial court found Dr. Bauer's testimony not to be persuasive. Doc. 12. This determination of fact weighed in favor of the State's case. The trial court's decision to overrule Sullivan's motion to suppress was consistent with its factual determinations. Thus, the trial court did not err in overruling Sullivan's motion to suppress. For this reason, Sullivan's first assignment of error is overruled.

*Third Assignment of Error*

{¶18} In his third assignment of error, Sullivan asserts that the trial court erred by overruling his objections to the admission of testimony regarding HGN Test research. At trial, Cortez mentioned the existence of several field studies that were conducted by NHTSA on the HGN Test. Sullivan claims that the trial court allowed the conclusions of these reports to be admitted as evidence and, in so doing, allowed impermissible hearsay evidence to be introduced at trial. Sullivan argues that this hearsay evidence obscured the fact that the six clues that Cortez observed could have been indicators of multiple conditions aside from intoxication. Sullivan

further argues that admission of this evidence constituted improper bolstering of Cortez's testimony.

Legal Standard

**{¶19}** Ohio Evid.R. 701 governs what a lay witness is permitted to include in their testimony and reads as follows:

> **If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.**

Evid.R. 701. Further, under the rules of evidence, "[h]earsay is generally inadmissible 'except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.'" *State v. Carter*, 3d Dist. Seneca No. 13-17-10, 2017-Ohio-7443, ¶ 8, quoting Evid.R. 802. Ohio Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶20}** "An appellate court's review of the admission of evidence is limited to a determination as to whether the trial court abused its discretion." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 8 (3d Dist.), quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "An abuse of discretion is more than an

-14-

error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 23, quoting *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, 2012 WL 5397596, ¶ 14. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *State v. Thompson*, 2017-Ohio-792, --- N.E.3d ---, ¶ 11, quoting *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

Legal Analysis

**{¶21}** In his brief, Sullivan reports that the trial court erred by allowing the following statement to be admitted at trial:

> **The original research done by the Southern California Research Institute, contracted by the National Highway Traffic Safety Administration, that began in 1975. In 1977, they did a field study only in California and again in 1977 they did another field and laboratory study and again in 1983 they did one in North Carolina, Maryland, Washington DC and Virginia, and as a result of those particular * * * [continued on p.69, line 14] they did research and they found that when these four clues are * * * that there was alcohol and or drugs of abuse…in his system.**

(Brackets original). Appellant's brief, 10. The appellant claims that admission of this statement allowed the State to bolster the testimony of Cortez through impermissible hearsay evidence. The appellant further argues that the "trial court * * * erred in allowing the continuation of this testimony over the several objections of defense counsel." Appellant's brief, 12.

**{¶22}** However, the appellant quotes an edited portion of the transcript in his brief. A complete read of the transcript shows that the trial court did not allow hearsay testimony to be admitted at trial. The exchange that is relevant to this assignment of error reads as follows:

**[Prosecutor]: What if anything did [seeing six of six clues] mean to you?**

**[Cortez]:** *That means to me that according to the research that was conducted—*

**[Defense Counsel]: Objection.**

**The Court: Overruled.**

**[Cortez]:** *—according to the research that was conducted that is provided to us through our training that—the original research was done by the Southern California Research Institute, contracted by the National Highway Traffic Safety Administration. That began in 1975. In 1977 they did a field study only in California and again in 1977 they did another field and laboratory study and again in 1983 they did one in North Carolina, Maryland, Washington D.C., and Virginia and as a result of those particular—*

**[Defense Counsel]: Objection, your honor, this is hearsay testimony.**

**The Court: The question was what did the observations of the six clues mean to the officer.**

**[Cortez]: I'm just trying to explain so the jury understands.**

**The Court: Without getting into the several research matters that aren't before the court.**

**[Prosecutor]: Okay.**

**The Court: If you want to take him back to the basis of the training * * *.**

**[Prosecutor]: I'll ask a question to help get all of that aside, what do these results of Mr. Sullivan indicate to you?**

**[Cortez]:** *To simply put it, they did research and they found that when these four clues are—*

**[Defense Counsel]: Objection.**

**The Court: Sustained.**

**[Prosecutor]: Just if you can, Sergeant Cortez, so having observed those six clues, three in each eye what did that mean to you about Mr. Sullivan on May 20, 2016?**

**[Cortez]:** *That there was alcohol and/or drugs of abuse.*

**[Prosecutor]: Where?**

**[Cortez]:** *In his system.*

(Emphasis added). Trial Tr. 68-69.

{¶23} The trial judge did overrule the Defense's first objection to the statements about what the HGN Test results signified to Cortez. *Id*. at 68. From the transcript, it appears that Cortez was about to state that he based his opinions or inferences on studies that he had come across in his professional career. *Id*. At the time that the trial judge overruled the Defense's objection, it is not apparent from that transcript that Cortez intended to mention specific statements from these studies. *Id*. After the trial court overruled the Defense's first objection, Cortez made statements about several studies that have been conducted in the past. *Id*. at 69.

-17-

Before Cortez could mention any of the statements contained within these studies, the Defense objected. In response, the trial court sustained this second objection of the Defense. *Id.* When Cortez again exhibited an intention to reference statements contained in the field study reports, the trial court again sustained the third objection from the Defense before Cortez could state the results of the study. *Id.* Due to the timely objections of Defense counsel and the rulings of the trial court, no statistics, statements, or conclusions from these studies were admitted at trial. Thus, no hearsay was admitted as the trial court sustained the Defense's objections before Cortez made impermissible statements.

{¶24} After the third objection, the trial court instructed Cortez not to discuss the conclusions of studies not before the court, and the prosecutor clarified the question. *Id.* Cortez then stated what he believed the HGN Test results signified: he testified that he believed, on the basis of the results of this field sobriety test, "[t]hat there was alcohol and/or drugs of abuse * * * in [Sullivan's] system." *Id.* at 68-69. The appellant presents these statements as though they were derived from the field studies that Cortez referenced when they, in fact, represented Cortez's own opinions and inferences. Thus, this testimony, being from a lay witness, was admissible as these statements were "opinions or inferences" that were "rationally based on the perception of the witness * * *." Evid.R. 701.

{¶25} Ultimately, the Defense's objections were sustained, and the trial court did not permit hearsay testimony to be admitted. Thus, the appellant cannot show

that the State improperly bolstered its witness's testimony with hearsay evidence. Appellant also cannot demonstrate prejudice as the trial court sustained the Defense's objections and as the hearsay evidence was not admitted. For this reason, Sullivan's third assignment of error is overruled.

*Second Assignment of Error*

{¶26} In his second assignment of error, Sullivan argues that his Crim.R. 29 motion should have been granted because the State did not prove that he had alcohol in his system at the time of his car accident. In so doing, he claims that the State failed to establish an essential element of the crime with which he was charged. He argues that the State's case against him fails in the absence of proof that he consumed alcohol prior to his accident. For this reason, he argues that the trial court erred in denying his Crim.R. 29 motion for acquittal.

Legal Standard

{¶27} Crim.R. 29 reads, in its relevant part, as follows:

**(A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.**

Crim.R. 29(A). "An appellate court reviews a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of

the evidence claim. *State v. Lightner*, 3d Dist. Hardin No. 6-08-11, 2009-Ohio-544, ¶ 11, quoting *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995).

**{¶28}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Pierce*, 3d Dist. Seneca No. 13-16-36, 2017-Ohio-4223, ¶ 6, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), fn. 4. Under the sufficiency of the evidence standard, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Potts*, 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 12 (3d Dist.), quoting *Jenks* at paragraph two of the syllabus.

**{¶29}** R.C. 4511.19(A)(1)(a) prohibits operating a motor vehicle under the influence of alcohol and reads as follows:

> **(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:**
>
> **(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.**

R.C. 4511.19(A)(1)(a). Thus, in order for an appellate court to make a finding that the evidence supporting a conviction for violating R.C. 4511.19(A)(1)(a) was legally sufficient, the record must show that the State presented evidence that the defendant (1) was operating a "vehicle, streetcar, or trackless trolley" (2) in the State of Ohio (3) while he or she was "under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(1)(a).

{¶30} In establishing the third element—that the defendant was under the influence of alcohol—the State "need not establish a threshold level of alcohol concentration in the defendant's body. It must, however, prove that the defendant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol." *State v. Lowman*, 82 Ohio App.3d 831, 836, 613 N.E.2d 692, 695 (12th Dist.1992), citing *State v. Bakst*, 30 Ohio App.3d 141, 145, 506 N.E.2d 1208, 1213 (1st Dist.1986); *State v. Spicer*, 12th Dist. Preble App. No. CA90-11-022, 1991 WL 164591 (Aug. 26, 1991).

{¶31} "Whether there is legally sufficient evidence to sustain a verdict is a question of law." *State v. Schaeffer*, 2015-Ohio-3531, 41 N.E.3d 813, ¶ 14 (3d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). For this reason, "[i]n deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *Potts* at ¶ 12, quoting *State v. Jones*, 1st Dist.

Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.).

Legal Analysis

**{¶32}** In its argument, the Defense alleges that the State failed to produce evidence that establishes Sullivan was "under the influence of alcohol, a drug of abuse, or a combination of them," which is the third element of the offense with which Sullivan was charged. R.C. 4511.19(A)(1)(a). Since Sullivan has confined his argument to challenging the State's case on this element alone, our analysis will be limited to determining whether the State produced evidence establishing that Sullivan was "under the influence of alcohol or a drug of abuse."

**{¶33}** In this case, the arresting officer testified at trial that Sullivan had been in an accident where he missed a stop sign; had slow response times in answering questions; struggled to maintain his balance; held onto the cruiser to stabilize himself; made very deliberate movements; and was unaware of where he was. *Id.* at 53, 55. Cortez also testified that Sullivan smelled strongly of an alcoholic beverage; had a flushed face; and had blood shot glassy eyes. *Id.* at 53. On the basis of these observations, the officer requested that Sullivan submit to an HGN Test. *Id.* at 56. With Sullivan's consent, Cortez administered the HGN Test and, in this process, observed six out of the six clues in Sullivan's eyes. *Id.* at 56. At trial, Cortez discussed his experience, which included making 400 arrests for OVI violations over a period of twenty-three years. *Id.* at 23. He also testified about his

familiarity with the HGN Test, discussing his certifications, experience, and status as an instructor of this technique to law enforcement trainees. *Id*. at 58-65.

**{¶34}** These observations combined with the HGN Test results and the strong smell of an alcoholic beverage were the evidence of the third element of this offense that the State presented. In so doing, the State used circumstantial evidence to support the third element of this offense. Circumstantial evidence can be sufficient to establish that a driver was under the influence of alcohol. *See State v. Norris*, 168 Ohio App.3d 572, 2006-Ohio-4325, 861 N.E.2d 148, ¶ 16 (12th Dist.) (holding that "[c]ircumstantial evidence and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence."). The Defense points out that Sullivan did not admit that he had consumed alcohol earlier on the day of his accident. However, this fact does not mean that the trial court, in ruling on the Defense's Crim.R. 29 motion for acquittal, could not make a reasonable inference from the evidence presented at trial that Sullivan had consumed alcohol. *State v. Caldwell*, 10th Dist. Franklin No. 02AP-576, 2003-Ohio-271, ¶ 26. *Compare State v. Joy*, 5th Dist. Stark No. 2005-CA-00235, 2006-Ohio-1923, ¶ 122.

**{¶35}** Viewing all of the evidence in the light most favorable to the State, a rational trier of fact could have reasonably found that the State established that Sullivan was under the influence of alcohol. Since the State provided evidence for each of the essential elements of this crime that, if believed, could persuade a

reasonable trier of fact that Sullivan was guilty beyond a reasonable doubt, his conviction for operating a vehicle while under the influence is supported by sufficient evidence. Thus, the trial court did not err in denying Sullivan's Crim.R. 29 motion for acquittal. Accordingly, Sullivan's second assignment of error is overruled.

*Fourth Assignment of Error*

{¶36} In his fourth assignment of error, Sullivan argues that the jury returned a verdict against the manifest weight of the evidence. In particular, he alleges that the jurors disregarded a portion of the jury instructions that required them to find that the defendant had "consumed some alcohol" in order to return a guilty verdict. Sullivan asserts that the jury clearly lost its way as no evidence was presented that he had consumed alcohol. Further, he alleges that the guilty verdict demonstrates that the jurors disregarded the testimony of the Defense's expert. He concludes his argument by asserting that a guilty verdict under these circumstances was a manifest miscarriage of justice. For these reasons, he requests that this Court reverse his conviction.

Legal Standard

{¶37} When "deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion." *State v. Brentlinger*, 2017-Ohio-2588, --- N.E.3d ---, ¶ 36 (3d Dist.), quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d

136 (3d Dist.1997). "Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.). In the manifest weight analysis, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *Thompkins* at 389. On appeal, courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."**

(Citations omitted). *Plott, supra*, at ¶ 73.

**{¶38}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, 2014 WL 6725795, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, 982 N.E.2d 111, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

**{¶39}** As with his sufficiency of the evidence challenge to his conviction, Sullivan focuses his manifest weight argument on the third element of this offense,

which requires a finding that the defendant was "under the influence of alcohol, a drug of abuse, or a combination of them" to be convicted under R.C. 4511.19(A)(1)(a). For this reason, our analysis will focus on whether the evidence weighs heavily against a finding that Sullivan was "under the influence of alcohol" at the time of his accident on May 20, 2016. R.C. 4511.19(A)(1)(a).

{¶40} In this case, the State and the Defense each called one witness. For its case-in-chief, the State called Cortez to testify as to his observations on the night of Sullivan's accident. Previously, in reviewing the record to determine whether Sullivan's conviction was supported by sufficient evidence, we found that Cortez's testimony, if believed, supplied evidence, which could reasonably be believed, for each of the elements of operating a vehicle while under the influence. Under the manifest weight analysis, we reincorporate Cortez's above testimony here regarding his observations, the results of the HGN Test, and his experience in law enforcement. We add, for this analysis, the fact that Cortez chose not to perform further field sobriety tests after he observed six out of six clues in Sullivan's eyes during the HGN Test. The reason Cortez gave for this was that the weather was becoming inclement and was not suitable, in his opinion, for further field sobriety testing.

{¶41} For its case-in-chief, the Defense called an expert witness, Dr. Bauer, to testify. Dr. Bauer testified that he was a neurosurgeon who was licensed to practice medicine in the United States, Ireland, and the United Kingdom. During

his testimony, Dr. Bauer stated that he believed Sullivan had suffered from a traumatic brain injury as the result of the impact from the car accident. In his expert opinion, Dr. Bauer explained that he believed the indicators of intoxication that Cortez reported to the court were, in fact, symptoms of this trauma. This diagnosis was made by Dr. Bauer after he had a half an hour telephone conversation with Sullivan that occurred nearly three months after the accident. He admitted that he had not performed a physical examination of Sullivan, did not meet with Sullivan in person prior to making his diagnosis, had not reviewed Sullivan's medical history records, and had not been involved in any treatment for this alleged brain injury.

**{¶42}** After considering the evidence on the basis of its weight and credibility, we do not find that the evidence weighs manifestly against a finding of guilty. In our review of the record, we find that the jury could have reasonably found that Dr. Bauer's expert testimony was not persuasive and that Cortez's testimony was credible. A finding of guilty is not against the manifest weight of the evidence simply because an expert witness's testimony is found to be unpersuasive by a jury. *State v. Waugh*, 10th Dist. Franklin No. 07AP-619, 2008-Ohio-2289, ¶ 92-95, quoting *Croft v. State Farm Auto Ins. Co.*, 3d Dist. Allen No. 1-01-72, 2002 WL 18665, *3 (January 8, 2002). Further, we do not find any indication in the record that the jury lost its way or committed a miscarriage of justice in returning a verdict of guilty in this case. For this reason, Sullivan's fourth assignment of error is overruled.

*Conclusion*

**{¶43}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Municipal Court of Findlay, Ohio is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/hls**