[Cite as *State v. Skaggs*, 2022-Ohio-2822.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ROBERT A. SKAGGS,

    DEFENDANT-APPELLANT.

CASE NO. 3-21-22

O P I N I O N

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ROBERT A. SKAGGS,

    DEFENDANT-APPELLANT.

CASE NO. 3-21-23

O P I N I O N

**Appeals from Crawford County Municipal Court**
**Criminal Division**
**Trial Court No. 20-CRB-312 and 20-CRB-498**

**Judgments Affirmed**

**Date of Decision:  August 15, 2022**

APPEARANCES:

    *James W. Fruth* **for Appellant**

    *Brian N. Gernert* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Robert A. Skaggs ("Skaggs") brings this appeal from the judgment of the Municipal Court of Crawford County convicting him of four first degree misdemeanors. The trial court then sentenced Skaggs to 180 days on each count, with 60 days suspended on each and three of the sentences to be served consecutively, with one being served concurrently. Upon his release, Skaggs would serve 5 years of community control. Skaggs claims on appeal that 1) the verdicts are not supported by sufficient evidence; 2) the trial court erred in imposing maximum consecutive sentences; 3) he was denied the effective assistance of counsel; and 4) he was denied his right to allocution at the sentencing hearing. For the reasons set forth below, the judgments are affirmed.

{¶2} On April 23, 2020, complaints were filed charging Skaggs with menacing by stalking in violation of R.C. 2903.211 and telecommunications harassment in violation of R.C. 2917.21, both misdemeanors of the first degree. These charges were assigned case number 20 CRB 312 A & B. On July 1, 2020, complaints were filed charging Skaggs with menacing by stalking in violation of R.C. 2903.211, aggravated trespass in violation of R.C. 2911.211, and telecommunications harassment in violation of R.C. 2917.21(B), all misdemeanors of the first degree. These charges were assigned case number 20 CRB 498 A, B, & C. A jury trial was held on February 5, 2021. The jury returned verdicts of guilty

as to 20 CRB 312A, 20 CRB 312B, 20 CRB 498A, and 20 CRB 498C. The jury acquitted Skaggs of the aggravated trespass charge set forth in 20 CRB 498B.

{¶3} On March 31, 2021, a sentencing hearing was held. The trial court imposed a sentence on each of the four counts of 180 days in jail with 90 days suspended on each count followed by five years of community control. The trial court also ordered that each of the jail terms be served consecutive for a possible aggregate sentence of 24 months. Skaggs appealed from this judgment. On October 12, 2021, this Court dismissed the appeal as not arising from a final appealable order and remanding the matter to the trial court. *State v. Skaggs*, 3d Dist. Crawford Nos. 3-21-05, 3-21-06, 2021-Ohio-3639.

{¶4} On October 21, 2021, the trial court held a resentencing hearing. The trial court imposed a jail term of 180 days on each offense, with 60 days suspended on each. The sententences for 20 CRB 498A, 20 CRB 498C, and 20 CRB 312A were to run consecutive to each other while 20 CRB 312B ran concurrently to all of them for an aggregate jail term of 540 days with 180 days suspended. The trial court also imposed a community control term of five years to be served upon his release from jail. Skaggs filed a notice of appeal from these sentences and on appeal raises the following assignments of error.

**First Assignment of Error**

**There was insufficient evidence to support the verdict that [Skaggs] committed the offenses of menacing by stalking, aggravated trespass, and telecommunications harassment.**

**Second Assignment of Error**

**The trial court erred in imposing upon [Skaggs] the maximum amount of jail time plus the maximum amount of time on community control upon [Skaggs'] release from jail.**

**Third Assignment of Error**

**[Skaggs] did not receive the effective assistance of counsel and, as a result, was also denied his Sixth Amendment rights.**

**Fourth Assignment of Error**

**The trial court erred in denying [Skaggs] his right to allocution at the sentencing hearing.**

*Sufficiency of the Evidence*

{¶5} In the first assignment of error Skaggs alleges that his convictions were not supported by sufficient evidence. "Under the sufficiency of the evidence standard, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Sullivan*, 3d Dist. Hancock No. 5-17-09, 2017-Ohio-8937, ¶ 28, 102 N.E.3d 86 quoting *State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 12.

{¶6} At the trial, the State presented evidence through five witnesses. The first was R.L., the victim. R.L. testified that after she told Skaggs repeatedly not to contact her, he kept doing so. Tr. 69-70. She blocked his phone number and blocked

him on Facebook, yet he would call her from random numbers at various times, including the middle of the night. Tr. 70. He would also drive by her house on multiple occasions and would even stop in front of her house and just sit there. Tr. 71-72. In December of 2019, she filed for a civil protection order ("CPO"), which was granted. Tr. 72. After the CPO was in place, Skaggs stopped contacting R.L. for a while, but then began calling her, texting her, stopping by her house, and driving by her house again. Tr. 75-80. R.L. indicated that she responded to Skagg's contact with continued requests that he stop contacting her. R.L. testified the the impact of the text messages was mentally and emotionally draining her to the point she could not eat or focus on her job. Tr. 81. R.L. read part of a text message that Skaggs sent to her.

> **A. This one says, it hurts me to do this. I've given you a chance, after chance to apologize, but I am being told to just, F'ing do it because you deserve it, you just don't care at all about me and obviously don't care if I send these messages and pics out, it, it [sic] you didn't think I'd do it, but you are wrong, [R.L.]. Well, that didn't make sense. I've got a phone call to make which will take about 20 minutes. When I hang up, I'll check, but if there is still no reply from you, I'll assume you aren't sorry at all and force me to be somebody I don't want to be. I love you, but if you can't even say you are sorry for stooping that low and trying to hurt me, then I'm not going to feel bad for hurting you back.**

> **Q. And what was the impact of receiving that text message?**

> **A. It felt threatening to me.**

> **\* \* \***

-5-

**A.  This is stupid and really unnecessary, [R.L.], I was just at your house Sunday, stop acting like this and blocking me or I'll start treating you the same way and embarrassing the F' out of you. Why do you always have to make a drama, why can't you just be civil and that's it, I'm sick of the way you talk to me, stop being an ass and I won't.**

**\* \* \***

**Q.  Okay.  And what was the impact of that message on you?**

**A.  I - - distress.**

Tr. 82-85.  These text messages were sent to R.L. on May 16, 2020.  Tr. 86.  In the summer of 2020, R.L. notified the police that she believed there was a tracking device on her vehicle.  Tr. 90.  Michael Pickens ("Pickens") came over, found the device, and removed it for her.  Tr. 91.  She turned the device over to the police.  Tr. 91.  After Skaggs went to jail, he did stop communicating with her.  Tr. 94.

{¶7} On cross-examination, R.L. admitted that after she had obtained the CPO, she did continue the relationship with Skaggs at times and described the relationship as being up and down.  Tr. 97.  R.L. also admitted that after April 13, 2020, Skaggs had not contacted her.  Tr. 102.  When R.L. contacted the police about the tracking device, they searched her vehicle, but found nothing.  Tr. 103.

{¶8} Lieutenant Tom Walker ("Walker") of the Bucyrus Police Department testified that on April 3, 2020, R.L. contacted him and asked him to warn Skaggs not to contact her anymore.  Tr. 108.  Walker then sent an email to Skaggs warning Skaggs not to contact R.L.  Tr. 108-109.  On April 13, 2020, R.L. contacted him

again to report that Skaggs was still contacting her through the phone, by leaving a note, and contacting the father of one of her children. Tr. 109. Walker then went to R.L.'s home to take her statement. Tr. 109. As Walker left R.L.'s home, he noticed a car that resembled Skaggs' car following him. Tr. 110. Walker then met with Skaggs and spoke to him. Tr. 111. Skaggs admitted that he had contacted R.L. and had dropped off a note at her home. Tr. 111. On May 25, 2020, R.L. called Walker because "she had heard rumor that there was a tracking device on her vehicle." Tr. 113. Walker told R.L. to bring the vehicle to the station and they would look for it. Tr. 113. When she brought it to the station, Walker and two other officers took it to the garage and searched it for the device, but they did not find anything. Tr. 113. Later, R.L. contacted him and told him that Pickens had located the device. Tr. 113. Walker was able to learn that the tracking device was purchased and registered to Skaggs. Tr. 116. The account for the unit was created on March 16, 2020. Tr. 118.

{¶9} T.R. testified that he is the victim's son. Tr. 127. R.L. and Skaggs were in a relationship that ended in 2019. Tr. 127. T.R. testified that he saw text messages Skaggs sent to R.L. and he saw Skaggs driving by his home. Tr. 128. This occurred after the relationship ended in 2019. Tr. 129. T.R. also witnessed R.L. telling Skaggs to stop contacting her. Tr. 129. According to T.R. Skaggs was "constantly" calling and texting R.L. in 2019. Tr. 130. However, he did not recall if she was still receiving these messages in 2020. Tr. 130. T.R. indicated that in

2020, he observed his mother being stressed because "she received calls like way late in the afternoon, well past midnight sometimes and it would like keep her up and she would be constantly declining them". Tr. 131.

{¶10} Pickens testified that he met R.L. through his acquaintance with Skaggs. Tr. 136. In June of 2020, he told R.L. that Skaggs had put a tracking device on R.L.'s vehicle. Tr. 137. Pickens learned about the device when Skaggs told him about it in February of 2020. Tr. 138. In June of 2020, Pickens went to R.L.'s home and found a device on the passenger side of the vehicle. Tr. 139.

{¶11} Garth Hoover ("Hoover") testified that he is R.L.'s neighbor. Tr. 150. He was not acquainted with Skaggs but knew him by sight. Tr. 150. Between January and April of 2020, Hoover saw Skaggs pull up in front of R.L.'s home and sound the horn. Tr. 151. It was annoying and happened quite a few times. Tr. 151. For a while, "it was every day, I mean all the time during the day." Tr. 151. During those times, he knew Skaggs was not supposed to be there because he had spoken to R.L. Tr. 152. On R.L.'s birthday, Skaggs put a sign on his yard facing R.L.'s house that said "Happy Birthday". Tr. 153. Skaggs later removed the sign. Tr. 153.

{¶12} Here, Skaggs was convicted of two counts of menacing by stalking and two counts of telecommunications harassment. To obtain a conviction for menacing by stalking, the State must prove that the defendant engaged in a pattern of conduct knowing it would cause another to believe that the defendant would

cause either physical harm or mental distress to that person or a family member. R.C. 2903.211(A). R.L. testified that in the months after the CPO, Skaggs continuously called her and sent her text messages. He would drive by her house frequently and sound his horn. He would also park in front of her home. This occurred over multiple months. Additionally, there was testimony that a tracking device registered to Skaggs was found on her car and Skaggs would indicate that he knew where she was. This all occurred after she had asked Skaggs repeatedly to stop contacting her and had obtained a CPO. T.R. and Hoover confirmed R.L.'s testimony about the frequency of the calls and drive bys. R.L. read one of the text messages where Skaggs appeared to threaten to embarrass her. R.L. also testified that she was mentally distressed by Skaggs' repeated conduct. Given all this evidence and viewing it in a light most favorable to the State, a reasonable juror could conclude that Skaggs had engaged in a pattern of activity knowing that it would cause mental distress to R.L. Thus, the two counts of menacing by stalking are supported by sufficient evidence.

{¶13} To obtain a conviction for telecommunications harassment, the State must prove that the defendant knowingly communicated with another with a telecommunications device for the purpose of harassment. R.C. 2917.21. A "telecommunications device" is defined as "any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone,

cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem." R.C. 2913.01(Y). The testimony of R.L. was that Skaggs continued to call and text her on her cell phone over a period of months after he received the CPO telling him not to contact her and after she had repeatedly told him not to do so. R.L. also testified that some of this contact came while she was at work and in the middle of the night. T.R. testified that the phone calls and text messages were constant. Viewing this evidence in a light most favorable to the State, a reasonable juror could have determined that Skaggs had repeatedly contacted R.L. via a cell phone after being told not to do so and the purpose of the contact was to harass her. Thus the verdicts of guilty as to the two counts of telecommunications harassment are supported by sufficient evidence. The first assignment of error is overruled.

*Sentencing*

{¶14} In the second assignment of error, Skaggs claims that the trial court erred by sentencing him to the maximum sentences on each count and then imposing the maximum community control sanction as well. Consecutive sentences for misdemeanors may be imposed as long as the aggregate term to be served does not exceed 18 months. R.C. 2929.41(B)(1). In addition to the jail term, the trial court may also impose a community control sanction. R.C. 2929.25(A)(1). The trial court may

> **[i]mpose a jail term under [R.C. 2929.24] from the range of jail terms authorized under that section for the offense, suspend all or a portion of the jail term imposed, and place the offender under a community control sanction or combination of community control sanctions authorized under [R.C. 2929.26, 2929.27, or 2929.28].**

R.C. 2929.25(A)(1)(b).  The community control sanctions imposed may not exceed five years.  R.C. 2929.25(A)(2).

{¶15} Here, the trial court imposed an aggregate jail term of 540 days (the equivalent of 18 months) and suspended 180 days.  The trial court then imposed a five-year term of community control.  This sentence is authorized by R.C. 2929.25.  Thus, the trial court did not err in imposing it.  The second assignment of error is overruled.

*Effectiveness of Counsel*

{¶16} Skaggs argues in the third assignment of error that he was denied the effective assistance of counsel.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client.  Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d**

> **623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent.** *See Vaughn v. Maxwell* **(1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164;** *State v. Jackson***, 64 Ohio St.2d [107] at 110–111, 18 O.O.3d [348] at 351, 413 N.E.2d [819] at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "The prejudice inquiry, thus, focuses not only on outcome determination, but also on 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180 quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶17} Skaggs claims that his counsel was ineffective for three reasons. The first is that counsel failed to object to hearsay statements. However, Skaggs does not point to any specific instances in the record instead choosing to make a broad statement that counsel "routinely" failed to object. "Refraining from objecting to otherwise objectionable evidence may, depending upon the circumstances, be

sound trial strategy." *State v. Proffitt*, 12th Dist. Butler Nos. CA2016-07-134 and CA2016-07-135, 2017-Ohio-1236, ¶ 32. "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998-Ohio-343, 693 N.E.2d 267. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Hartman,* 2d Dist. Montgomery No. 26609, 2016-Ohio-2883, ¶ 48, 64 N.E.3d 519. Additionally, Skaggs does not show how this alleged error prejudiced him. A review of the record does not show any possible hearsay statements, which, if removed from the record, would have affected the outcome of the case.

{¶18} Skaggs also alleges that counsel was ineffective for failing to object to the admission of the tracking device because the State "botched the handling" of it. Skaggs does not specify exactly how it was "botched", but a review of the record shows that the bag in which it was stored was torn by Walker when he removed the item from the evidence lock box. Walker informed the court that he did not realize that the device was attached to the box by the magnets on it and when he went to pick up the bag it tore resulting in a hole in the bag. Tr. 114. Although this situation is not ideal, it did not affect the outcome of the trial at all. The connection between the device and Skaggs came from the records that Walker obtained from the company that sold it and provided the service for the device, not the device itself.

Most importantly, the tracking device formed the basis of the Aggravated Trespass charge and the jury found him not guilty of that charge. Mar. 31, 2021 Tr. 13. The trial court even refused to consider the tracking device for the purpose of sentencing. *Id.* Thus, there was no prejudice that resulted from the evidence bag being torn.

{¶19} The third argument Skaggs makes regards the testimony by Hoover that Skaggs put a Happy Birthday sign on Hoover's lawn. Skaggs claims that counsel failed to argue that there was no evidence that it was intended for R.L. Regardless of whether the sign was intended for R.L., there was plenty of other evidence provided through the testimony of R.L. and T.R. that Skaggs was repeatedly contacting R.L. despite being asked numerous times to stop and having a CPO put in place requiring him to stop. Thus any alleged error would be harmless. Since no prejudice from any of the alleged errors occurred, the representation provided by counsel was not ineffective. The third assignment of error is overruled.

*Right to Allocution*

{¶20} Finally, Skaggs argues that he was denied his right to allocution at the sentencing hearing. There is no question that a defendant must be addressed at a sentencing hearing and offered the opportunity to make a statement. Crim.R. 32(A)(1). A review of the record shows that at the initial sentencing hearing on March 31, 2021, the trial court and Skaggs engaged in a dialogue. Mar. 31, 2021 Tr. 20-26. Skaggs was permitted to say anything he wished at that time. Additionally, his counsel spoke to put forth evidence in mitigation. Thus, the trial

court complied with Crim.R. 32 at that time. At the resentencing hearing, Skaggs was represented by two attorneys. Counsel for Skaggs provided a statement as to what Skaggs would like to see happen. The trial court did ask Skaggs some questions. Mar. 31, 2021 Tr. 21-26. Skaggs was permitted to add his own statements regarding what they were discussing. *Id*. at 25. The trial court specifically stated that it considered the statements made at the first sentencing hearing, and the statements made by Skaggs at the second hearing. *Id.* at 28. Although the trial court did not ask Skaggs specifically if he wanted to make a statement, he did allow Skaggs to speak and also asked if there was "anything else" before ruling. *Id*. at 27. Neither Skaggs nor either of his attorneys indicated that Skaggs had anything more to say. Based upon the record before this court, we do not find that Skaggs was denied the opportunity to exercise his right to allocution. The fourth assignment of error is overruled.

**{¶21}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgments of the Municipal Court of Crawford County are affirmed.

*Judgments Affirmed*

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/hls**