[Cite as *State v. Higgins*, 2024-Ohio-3055.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 8-23-19

v.

TREYVON HIGGINS,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Bellefontaine Municipal Court
Trial Court No. 23 CRB 00337

**Judgment Affirmed**

**Date of Decision:  August 12, 2024**

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Crystal K. Welsh* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Treyvon Higgins ("Higgins") appeals the judgment of the Bellefontaine Municipal Court, arguing his conviction for domestic violence is against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Higgins and Jasmine Shoffner ("Jasmine") live together with their one-year-old child. On June 19, 2023, they went to a restaurant where Jasmine had several drinks. Jasmine and Higgins later invited Jasmine's sister, Jayla Shoffner ("Jayla"), and a friend, Aiden Elsass ("Elsass"), to their apartment. Jayla testified that, after she arrived, Higgins and Jasmine had a "heated argument." (Tr. 7). Jayla and Jasmine then left the apartment, went to get some coffee, and drove around for a while.

{¶3} Jayla indicated that, when she and Jasmine returned to the apartment parking lot, Higgins came down to where they were located and looked agitated. Jasmine and Higgins then went up to the apartment while Jayla followed behind them. Jayla testified that the front door was locked by the time she reached the apartment. She stated that she knocked on the door and that, after the door was opened, she saw that Jasmine's face was bleeding.

{¶4} Inside the apartment, Higgins and Jasmine continued to argue. At some point, Jasmine went into the bathroom with a knife and locked the door. Elsass testified that Higgins kicked in the bathroom door, grabbed the knife from Jasmine, and then grabbed her by the throat. Both Elsass and Jayla testified that Jasmine did not have the knife while Higgins was choking her. Jayla testified that she went into the bathroom to help Jasmine and that Higgins shoved her (Jayla) into the door.

{¶5} At some point, a neighbor heard the commotion and called the police. When Officer Devin Fowler ("Officer Fowler") arrived at the apartment, he observed red marks on Jasmine's neck and saw blood on her nose. Officer Fowler testified that Jasmine was crying and that Higgins was agitated. Jasmine did not indicate what had caused the red marks. After speaking with Jayla and Elsass, Officer Fowler placed Higgins under arrest.

{¶6} On June 20, 2023, Higgins was charged with one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor.[1] The State called Jayla, Elsass, and Officer Fowler to testify at a bench trial on August 16, 2023. Jasmine was called as a witness by the Defense. She testified that she went into the bathroom with the knife intending to harm herself; that Higgins kicked in the door to ensure her safety; and that he never choked or hit her. The trial court

---

[1] Higgins was also charged with one count of assault in violation of R.C. 2903.13(A), a first-degree misdemeanor, for his conduct towards Jayla. However, after Jayla testified at trial that she did not have any injuries, Higgins was acquitted of the assault charge.

found Higgins guilty of the charge of domestic violence and issued a judgment entry of sentencing on September 6, 2023.

*Assignment of Error*

{¶7} Higgins filed his notice of appeal on September 8, 2023. On appeal, he raises the following assignment of error:

**The conviction for domestic violence was not supported by the weight of the evidence.**

*Legal Standard*

{¶8} "A manifest-weight analysis examines whether the State has carried its burden of persuasion at trial." *State v. Carroll*, 2024-Ohio-1626, ¶ 58 (3d Dist.). On review, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 2020-Ohio-329, ¶ 12 (3d Dist.), quoting *State v. Plott*, 2017-Ohio-38, ¶ 73 (3d Dist.).

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶9} An appellate court must "allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, ¶ 38 (3d Dist.), quoting *State v.*

*Coleman*, 2014-Ohio-5320, ¶ 7 (3d Dist.). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Hunter*, 2011-Ohio-6524, ¶ 119, quoting *Thompkins* at 387. To establish a conviction for domestic violence in violation of R.C. 2919.25(A), the State must prove that the defendant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." R.C. 2919.25(A).

*Legal Analysis*

{¶10} At trial, Jayla and Elsass gave similar accounts of what transpired in the bathroom. Both testified that Jasmine went into the bathroom with a knife and that Higgins kicked open the door. Elsass stated that Higgins then "grabbed the knife from her, was standing over her, strangling her, yelling, and was very vicious." (Tr. 18). Jayla also testified that she saw Higgins grabbing Jasmine by the throat while he stood over her. Jayla and Elsass indicated that Jasmine did not have the knife when Higgins was choking her. Jayla stated that Higgins shoved her (Jayla) into the door when she tried to help Jasmine. However, Elsass went outside before Jasmine exited the bathroom and did not see whether Jayla intervened in the incident.

{¶11} Jasmine testified that she and Higgins had been drinking that evening. She stated that she began to fight with Higgins after Jayla said that Higgins had been flirting with her. Jasmine testified that she had felt depressed, so she grabbed a knife

and locked herself in the bathroom. She stated that she had intended to harm herself and that Higgins kicked in the door to ensure she was safe. Jasmine stated that, while Higgins did grab her, he did not choke or hit her. She also testified that Jayla was not in the bathroom during this incident. While she did not know what caused the cut on her nose, Jasmine said that the red marks on her neck were caused by her anxiety. On cross-examination, she admitted that she had resumed living with Higgins by the time of trial, even though a no contact order had been issued.

{¶12} During her testimony, Jayla stated that she could not recall what Higgins and Jasmine were arguing about that evening but denied telling Jasmine that Higgins had been flirting with other women. Both Elsass and Jayla testified that they did not know why Jasmine took a knife into the bathroom. But Elsass indicated that Higgins did not appear to be restraining Jasmine to prevent self-harm and described his actions as "violent." (Tr. 18). Jayla also characterized Higgins's actions towards her and her sister as "violent." (Tr. 14).

{¶13} On appeal, Higgins points to Jasmine's testimony to argue that his conviction is against the manifest weight of the evidence. However, the trial court found Jasmine's testimony regarding the incident not to be credible. As the finder of fact, the trial court was "free to believe all, some, or none of the testimony of each witness [that] appear[ed] before it." *State v. Houdeshell*, 2018-Ohio-5217, ¶ 39 (3d Dist.). Further, Elsass largely corroborated Jayla's description of the incident that occurred in the bathroom. While these two witnesses gave testimony that

conflicted with Jasmine's account, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Williams*, 2009-Ohio-3237, ¶ 16 (10th Dist.).

{¶14} Having examined the evidence on the basis of its weight and credibility, we have found no indication that the finder of fact clearly lost its way and returned a verdict that was against the manifest weight of the evidence. The sole assignment of error is overruled.

*Conclusion*

{¶15} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Bellefontaine Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**