[Cite as *State v. Alselami*, 2012-Ohio-987.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  5-11-31

    v.

HAIDER H. ALSELAMI,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2011 CR 84

**Judgment Affirmed**

**Date of Decision:**    **March 12, 2012**

APPEARANCES:

    *Eric Allen Marks*  for Appellant

    *Mark C. Miller and Alex K. Treece*  for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Haider H. Alselami ("Alselami"), appeals from the judgment of the Hancock County Court of Common Pleas, sentencing him to prison for three years after he pled guilty to one count of aggravated possession of drugs. On appeal, Alselami contends that the trial court erred in accepting his guilty plea because it was not made knowingly, intelligently, and voluntarily, and that it abused its discretion in imposing a three-year mandatory prison term without considering the statutory guidelines. For the reasons set forth below, the judgment is affirmed.

{¶2} During a traffic stop for speeding on I-75, Alselami was found to be in possession of 150 Oxymorphone pills. Alselami originally stated that the pills had been prescribed to him for an injury, but later admitted to purchasing the pills on the streets in Detroit. He stated that he intended to send them to his mother in Iraq, who suffered from injuries received in a roadside bombing that had killed many members of the family. Alselami is an Iraqi national, but has been a permanent resident of the United States since 1993, when he was granted political asylum.

{¶3} On April 19, 2011, the Hancock County Grand Jury indicted Alselami on one count of Aggravated Possession of Drugs, a felony of the second degree in violation of R.C. 2925.11(A). The indictment stated that Alselami possessed

Oxymorphone in an amount equal to or greater than five times the bulk amount but less than fifty times the bulk amount. The penalty for this offense is a mandatory term of imprisonment for a determinate term of no less than two years, but no more than eight, and a fine of not less than $7,500 nor more than $15,000.

{¶4} On June 1, 2011, shortly before the scheduled trial, a change of plea hearing was held. Alselami's attorney informed the trial court that Alselami did not read English at all, or very well, but that he understood spoken English with no problems. Therefore, the attorney assured the trial court that he had read all of the plea agreement papers to Alselami, as well as the indictment and the discovery, and explained the constitutional rights that were being waived as a result of this plea. (Plea Hearing Transcript, p. 7) His attorney represented that Alselami understood his constitutional rights and what he was giving up by entering a guilty plea. (*Id.*)

{¶5} The trial court then spoke directly with Alselami to be certain that his decision met the requirements of being voluntary, that it was made knowingly, and was done intelligently. (Tr. p. 9) Because Alselami was not a U.S. citizen, and English was not his first language, the trial court was very careful to be certain that Alselami understood everything that was said. The court asked Alselami to confirm that he understood at each step of the proceedings, and if Alselami did not understand something, the trial court assured him that it would explain the matter

in a different way and rephrase it so that it was clear. (Tr. p. 11) The trial court also offered Alselami the services of a translator, but Alselami assured the court that was not necessary. (Tr. p. 15)

{¶6} The trial court then conducted a full and extremely detailed Crim.R. 11 plea colloquy, explaining every step in simple language, often repeating the explanations, and inquiring to make certain that Alselami understood what was said and what the implications were. Alselami answered all of the questions in the affirmative and stated that he understood. He acknowledged that he knew what rights he was giving up and what the consequences of his guilty plea would be. The trial court also warned Alselami that his conviction could possibly result in deportation and the denial of naturalization, depending upon what immigration services chose to do.

{¶7} Before having Alselami sign the plea agreement, the trial court again inquired as to whether his attorney had read it to him, explained it, and answered all of his questions. (Tr. pp. 30-31) Alselami answered each question in the affirmative. (*Id.*) And finally, before accepting Alselami's guilty plea, the trial court asked the State to provide more information "as to what occurred to support my consideration of the plea." (Tr. p. 32) The State then provided a summary of the events leading to the indictment, and explained the results of the State's

investigation of the case. Only then did the trial court accept Alselami's change of plea and find him guilty. (Tr. p. 34)

{¶8} The sentencing hearing was held on August 5, 2011, and the trial court reviewed the terms of the plea agreement. The State had agreed it would ask that the sentence not exceed a four-year term of incarceration. The trial court again stated the reminder that this was a mandatory incarceration case and that the court "must impose a prison term upon the Defendant today." (Sentencing Transcript., p. 5)

{¶9} Alselami's attorney asked the court to consider imposing the minimum two-year sentence. He acknowledged that Alselami did have prior convictions, but they were not drug related "and he has led a law abiding life for a significant number of years." (Sent. Tr. p. 6) The attorney also stated that Alselami had requested he ask the court to impose probation, even though he had advised Alselami that there was a mandatory sentence involved. (Sent. Tr. p. 5) Alselami's attorney further asked for leniency because Alselami's mother was ill and dying in Iraq, and Alselami had been her sole source of support. Furthermore, Alselami would likely be deported to Iraq after serving his sentence, which would be a worse punishment than the incarceration. (Sent. Tr. p. 7-8) Alselami's attorney read a letter that Alselami had prepared, expressing his remorse for his actions, and asking for mercy and leniency. (Sent. Tr. p. 9) Alselami also took

the opportunity to address the court himself, apologizing for what he did, but assuring the court that he was not a drug dealer, and that his only intention was to help his mother. (Sent. Tr. p. 11)

{¶10} The trial court discussed its consideration of the sentencing requests in great detail, and also reiterated the fact that because the statute specified a mandatory sentence, he had no discretion to sentence Alselami to probation or anything less than the minimum time in prison. (Sent Tr. pp. 13-16) The trial court then sentenced Alselami to a mandatory three years in prison, with credit for 111 days already served, and informed him that he would be subject to postrelease control.

{¶11} It is from this judgment that Alselami now appeals, raising the following two assignments of error for our review.

### First Assignment of Error

**The trial court abused its discretion by imposing a three year mandatory prison term without considering the statutory guidelines of R.C. 2929.11 and R.C. 2929.12**

### Second Assignment of Error

**The trial court erred in accepting [Alselami's] guilty plea because it was not made knowingly, intelligently, and voluntarily.**

{¶12} To facilitate our review, we shall address the assignments of error in reverse order. In the second assignment of error, Alselami asserts that his plea

was not voluntarily, intelligently, and knowingly made because he may not have fully understood the proceedings due to an uncertain grasp of the English language. In support Alselami points to a portion of the hearing where he did not understand a word ("interpreter"), and he also contends that his continued requests for probation indicated that he did not fully understand that the trial court was required to impose a "mandatory" prison sentence.

{¶13} Before accepting a guilty plea, Ohio Crim.R. 11 requires the trial court to personally address a defendant to determine if the plea is voluntary, and that the defendant understands both the plea itself as well as the rights waived by pleading guilty. Crim.R. 11(C)(2). In determining whether a guilty plea is voluntarily, intelligently and knowingly made, the court must look to the totality of the circumstances. *State v. Calvillo*, 76 Ohio App.3d 714, 719 (8th Dist.1991), citing to *State v. Carter*, 60 Ohio St.2d 34, 38 (1979).

> The essential duty imposed upon the trial judge by Crim.R. 11 is to ascertain that the defendant's decision to plead guilty, and thereby waive his various constitutional rights to a fair trial, is a knowing and intelligent decision. In the typical case, this requires the trial judge to determine that the defendant, with an understanding of the nature of the charges against him, acknowledges his guilt, and that, with an understanding of the constitutional protections to which he is entitled, he agrees to waive them.

*State v. Padgett*, 67 Ohio App.3d 332, 338 (2nd Dist. 1990) Crim.R. 11 requires a meaningful dialogue between the court and the defendant. A trial court's

acceptance of a guilty or no contest plea will be affirmed only if the trial court engaged in meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights "in a manner reasonably intelligible to that defendant." *State v. Ballard*, 66 Ohio St.2d 473 (1981), at paragraph two of the syllabus; *State v. Veney*, 120 Ohio St.3d 176, 2008–Ohio–5200, ¶ 27.

{¶14} In reviewing the record, and looking at the totality of the circumstances, we find that the trial court took great pains to comply with every aspect of Crim.R. 11 and went beyond those requirements to assure that Alselami understood everything and that he was fully apprised of all of his rights. The trial court was assured repeatedly by Alselami and by Alselami's attorney that he understood everything.

{¶15} The plea colloquy in the lower court involved a great deal more than "yes or no" questions and answers. It included a discussion concerning Alselami's history, including his immigration status, educational level, and familial status. Alselami answered all of the court's questions succinctly and appropriately.

{¶16} Alselami's lack of understanding of one word in the proceedings, the word "interpreter," did not demonstrate a lack of understanding in general. The trial court repeatedly had made it very clear that if there was anything Alselami did not understand, he should ask, and the following exchange demonstrates that

Alselami understood he was free to ask questions and ask for clarification if necessary.

> The Court:    As I understand it, you don't, you cannot read English, but you speak English and understand English?
>
> Defendant:    Right, correct.
>
> The Court:    And from what I can tell at this point, you do not need an interpreter?
>
> Defendant:    What is that?
>
> Mr. Shuman: Someone to translate for you?
>
> Defendant:    No, sir.
>
> The Court:    If something comes up during the proceedings today that doesn't make sense for example, or maybe I use a term that you don't understand, let me know and we will make sure we change it, and if there are issues such as that for interpreting or translation, please let me know  that.
>
> Defendant:    Sure

(Tr. pp. 14-15)  What this exchange demonstrates is that if Alselami had trouble understanding a term, he would not hesitate to ask for clarification.  There was nothing in the record that would indicate a lack of understanding of the plea.

{¶17} Alselami was also informed multiple times that a prison sentence would be mandatory.  Alselami's attorney indicated that "[m]y client is aware there is a mandatory prison sentence in this case."  (Tr. p. 6)  The attorney also

stated that he "read the plea papers to him * * *" and expressed his belief in his client's understanding. The trial court confirmed this information with Alselami.

**{¶18}** The trial court also reaffirmed that prison was the only outcome in this matter before accepting Alselami's change of plea. First, concerning the negotiations, the court indicated, "I could sentence you to something longer than four years." (Tr. p. 16). The trial court then further explained:

> The Court: Given the nature of the crime, the amount of drugs involved and the other factors, the law requires what's called a mandatory prison term, the minimum is 2 years, the maximum is 8 years. Do you understand that's the range?
>
> Defendant: I understand.
>
> The Court: Did [your attorney] explain to you what it means to have a mandatory prison term.
>
> Defendant: Yes, sir.
>
> The Court: That means that you must serve all of your sentence.
>
> Defendant: Yes, sir.
>
> The Court: That means that I cannot release you early.

(Tr. pp. 20-21)

**{¶19}** The consequences of his plea were explained to Alselami multiple times. He indicated he understood those terms and pled guilty to the offense. Alselami has not shown that the trial court committed any error in accepting his

guilty plea, nor has he presented any viable grounds for the withdrawal of his guilty plea. The second assignment of error is overruled.

{¶20} The first assignment of error alleges that the trial court erred in imposing sentence without giving proper consideration to the felony sentencing statute guidelines. Alselami complains that: (1) the sentence was contrary to law because the trial court failed to sufficiently indicate that it considered the sentencing factors in R.C. 2929.11 and R.C. 2929.12; and, (2) the trial court abused its discretion when it failed to properly apply the seriousness and recidivisms factors set forth in R.C. 2929.12.

{¶21} Ever since the Ohio Supreme Court's ruling in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 37. Courts, nevertheless, are still required to comply with the sentencing laws unaffected by *Foster*, such as R.C. 2929.11 and 2929.12, which require consideration of the purposes and principles of felony sentencing and the seriousness and recidivism factors. *Mathis* at ¶ 38. However, a sentencing court does not have to make any specific findings to demonstrate its consideration of those general guidance statutes. *Foster* at ¶ 42.

{¶22} R.C. 2929.11 provides that sentences for a felony shall be guided by the overriding purposes of felony sentencing: "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). In order to comply with those purposes and principles, R.C. 2929.12 instructs a trial court to consider various factors set forth in the statute relating to the seriousness of the conduct and to the likelihood of the offender's recidivism. R.C. 2929.12(A) through (D). In addition, a trial court may consider any other factors that are relevant to achieving the purposes and principles of sentencing. R.C. 2929.12(E).

{¶23} Alselami does not dispute that the sentence he received was within the statutory guidelines. However, he complains that the trial court imposed more than a minimum sentence despite the fact that Alselami had no record of drug related activity. He argues that that fact, coupled with his claims of needing to send the medication to his dying mother, would show that he was not a major drug dealer and that Alselami was not the type of person that was an intended target of the legislature's choice to impose mandatory prison terms for possession of controlled substances.

{¶24} Contrary to Alselami's assertions, the trial court extensively discussed on the record the various factors, pursuant to R.C. 2929.11 and 2929.12, that it considered before making the sentencing decision. (Sent. Tr. pp. 13-16)

-12-

The State had advocated for a four-year sentence, citing Alselami's prior criminal history and the volume of pills as justification. That was also the term agreed to in the plea agreement. However, the trial court did discuss the mitigating factors, even stating that "there are a number of mitigating factors that are present in this case * * *" and it sentenced Alselami to three years, instead of four or more years. (Sent. Tr. p. 14).

{¶25} The trial court also explained that "I don't believe two years is appropriate because of the fact that there is a prior criminal, substantial prior criminal record, that [factor,] plus the amount of these drugs we are talking about." (Sent. Tr. p. 15) Finally, the trial court discussed how it's discretion to impose sentence was limited by the requirements set forth by the legislature in the statutes, and it had no choice but to impose a mandatory prison sentence. (Sent. Tr. pp. 13-14)

{¶26} The record in this case shows that the trial court fully complied with all of the requirements pertaining to consideration of the statutory sentencing factors. In addition, the trial court's judgment entry specifically stated that it had considered "the principles and purposes of sentencing under the guidelines of [R.C.] 2929.11 and the seriousness and recidivism factors under [R.C.] 2929.12." (Aug. 15, 2011 J.E.) Finding no error in the trial court's imposition of sentence, the first assignment of error is overruled.

**{¶27}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**