[Cite as *State v. Dendinger*, 2019-Ohio-2158.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

      CASE NO. 13-18-38

      v.

RHONDA M. DENDINGER,

      O P I N I O N

      DEFENDANT-APPELLANT.

---

**Appeal from Tiffin-Fostoria Municipal Court**
**Trial Court No. CRB 1800979**

**Judgment Affirmed**

**Date of Decision:  June 3, 2019**

---

APPEARANCES:

    *Edwin M. Bibler* **for Appellant**

    *Richard H. Palau* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Rhonda M. Dendinger ("Dendinger") appeals the judgment of the Tiffin-Fostoria Municipal Court, alleging that her conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Further, Dendinger claims that trial judge was biased against her attorney. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Nathan Miller ("Miller") is married to Dendinger's daughter, Kelsey Dendinger ("Kelsey"). Tr. 11, 24. At the time of the incident forming the basis of this case, Miller and Kelsey were in the midst of a divorce proceeding, but both of them still lived in their marital residence. Tr. 12-13, 25. During this time, Kelsey would sleep in a bedroom while Miller would sleep on the couch. Tr. 13. Kelsey had been locking her bedroom door, alleging that Miller had been recording her while she slept. Tr. 13. Miller stated, at trial, that he needed access to the bedroom to shower, obtain his clothes, and care for his infant son. Tr. 14, 16-17. At some point, Kelsey left the key to the bedroom in the door. Tr. 14. Miller took the key and kept it, "so that nobody could be locked out of the bedroom." Tr. 9.

{¶3} On July 31, 2018, Kelsey called Dendinger and asked her to come to the house, saying, at trial, that she wanted her mother's "support." Tr. 25-26. Dendinger then drove to her daughter's house. Tr. 31. When she arrived, Dendinger

went inside the house, spoke to her daughter about the key, and then approached Miller. Tr. 31. Dendinger said, "Nate, just give her back the key." Tr. 32. After Miller denied having the key, Dendinger testified that she "reached to the outer edge of the lower pocket [of Miller's shorts] * * * to see if the key was in there." Tr. 32. Miller told Dendinger not to touch him. Tr. 10, 33. At this point, Miller and Kelsey began to have an argument, and Dendinger left the room to get Miller and Kelsey's infant son. Tr. 33.

{¶4} Miller testified that Dendinger returned and "started * * * patting [his] pockets, trying to get in [his] pockets again." Tr. 11. Miller then went outside and called the police. Tr. 11. Deputy Troy Callahan ("Deputy Callahan") responded to this call. Tr. 19. After speaking with Miller, Kelsey, and Dendinger, he issued a citation to Dendinger for disorderly conduct in violation of R.C. 2917.11(A)(5). Doc. 1. Tr. 19. This offense is a minor misdemeanor. Doc. 1.

{¶5} A bench trial was held on October 29, 2018. Tr. 1. Miller, Kelsey, Dendinger, and Deputy Callahan testified before the trial court. At the close of the State's case-in-chief, the Defense made a Crim.R. 29 motion, alleging that the State did not produce sufficient evidence to support a conviction. Tr. 22. The trial court denied this motion. Tr. 24. During closing arguments, the Defense argued that Dendinger's actions were not physically offensive. Tr. 40-41. In rebuttal, the prosecutor stated, "I'll keep it short Your Honor. Just the fact that the man's house is not his castle, surely his pants are his castle." Tr. 41. The trial court then found

Dendinger guilty and ordered her to pay a fine of $100.00 plus court costs. Tr. 43-44.

{¶6} Appellant filed her notice of appeal on November 26, 2018. Doc. 18. On appeal, appellant raises the following assignments of error:

### First Assignment of Error

**There was insufficient evidence to convict the defendant-appellant of Disorderly Conduct pursuant to R.C. 2917.11(A)(5), as the State of Ohio failed to prove beyond a reasonable doubt that the defendant-appellant acted recklessly, that her conduct was physically offensive and that she had no lawful reasonable purpose.**

### Second Assignment of Error

**The trial court erred and the defendant-appellant's conviction of disorderly conduct was against the manifest weight of the evidence as the State of Ohio failed to prove beyond a reasonable doubt that the defendant-appellant acted recklessly, that her conduct was physically offensive and that she had no lawful and reasonable purpose.**

### Third Assignment of Error

**The court clearly showed bias toward Defendant-Appellant's attorney by (1) inappropriate comments made during trial and (2) directing the court's closing colloquy directly to the Attorney for the defendant, showing the Defendant-Appellant received an unfair trial.**

*First Assignment of Error*

{¶7} Dendinger argues that her conviction for disorderly conduct is not supported by sufficient evidence because (1) her actions did not "recklessly cause inconvenience, annoyance, or alarm to another" and (2) her actions did not "create

a condition that is physically offensive to persons or that presents a risk of physical harm." R.C. 2917.11(A)(5).

Legal Standard

**{¶8}** A challenge to the sufficiency of the evidence supporting a conviction "is a question of law and a 'test of adequacy rather than credibility or weight of the evidence.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19. "The sufficiency-of-the-evidence analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Luebrecht*, 3d Dist. Putnam No. 12-18-02, 2019-Ohio-1573, ¶ 36, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12. On appeal, the applicable standard

> **is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Plott,* 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.).

**{¶9}** In order to prove a defendant committed the offense of disorderly conduct in violation of R.C. 2917.11(A)(5), the State must establish that the defendant "[1] recklessly [2] cause[d] inconvenience, annoyance, or alarm to

another by * * * [3] [c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender. R.C. 2917.11(A)(5). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

## Legal Analysis

{¶10} As to the first element, Miller's testimony provides some evidence that Dendinger acted with the requisite mental state. On appeal, Dendinger argues that the trial court erred by applying an objective, reasonable person standard to her conduct and asserts that she "had no advanced inkling that her conduct could possibly cause Mr. Miller inconvenience, annoyance or alarm." Appellant's Brief, 7-8. For two reasons, we find this argument to be without merit. First, Ohio case law indicates that an objective, reasonable person standard is applicable in this analysis. *See State v. Glenn*, 1st Dist. Hamilton No. C-030356, 2004-Ohio-1489, ¶ 25; *State v. Blair*, 2d Dist. Montgomery No. 24784, 2012-Ohio-1847, ¶ 9; *State v. Lamm*, 80 Ohio App.3d 510, 609 N.E.2d 1286 (4th Dist.); *Warrensville Heights v. Brown*, 8th Dist. Cuyahoga No. 89346, 2008-Ohio-126, ¶ 14; *State v. Wiley*, 11th Dist. Portage No. 2013-P-0067, 2014-Ohio-5766, ¶ 19-20.[1] Second, the evidence

---

[1] In *Glenn, Blair, Brown*, and *Wiley*, the defendant was charged with a violation of R.C. 2917.11(A)(2). *Glenn, supra*, at ¶ 24. However, the element of recklessly causing inconvenience, annoyance, or alarm is common to all of the offenses listed under R.C. 2917.11(A). *Id*.

in the record indicates that Dendinger was aware that her actions were likely to cause Miller to be inconvenienced or annoyed.

{¶11} At trial, Miller testified that Dendinger reached into his pockets two times. Tr. 10-11. He told her to stop the first time she reached inside his pockets, but, five minutes later, she reached inside his pockets again. Tr. 10-11. Thus, regardless of whether Dendinger should have been aware that reaching into her son-in-law's pockets was inappropriate before she did so the first time, she was aware that such conduct was inappropriate before she reached into his pockets the second time because Miller had previously told her not to do this. Tr. 10-11. Based on this testimony, there was some evidence that Dendinger reached into Miller's pockets with "heedless indifference to the consequences" of this action. R.C. 2901.22(C). *See State v. Bailey*, 1st Dist. Hamilton No. C-010641, 2002-Ohio-3133, ¶ 31.[2]

{¶12} As to the second element, Miller's testimony also indicates that Dendinger engaged in behavior that could cause a reasonable person to be inconvenienced or annoyed. Miller testified that, in addition to having sensitive areas of his body touched, Dendinger was also pushing down in his pockets so hard that his shorts were sliding down his legs so that his boxers were visible. Tr. 10-11. He also stated that he had told Dendinger to stop reaching into his pockets more

---

[2] In this case, the defendant was charged with persistent disorderly conduct. *Bailey, supra*, at ¶ 38. However, *Bailey* remains instructive as the elements of recklessness, inconvenience and annoyance, and physical offensiveness are the same.

than once and "tried to get away from her." Tr. 10. He testified that he then left his house to avoid Dendinger and called the police. Tr. 10-11.

{¶13} As to the third element, his statements also indicate that these actions were "physically offensive" as his mother-in-law was, according to his testimony, reaching into his pockets and feeling around sensitive areas. He further said that this gave him an "[e]xtremely uncomfortable feeling," explaining that "she was reaching in my pockets on the side. She was touching me where I don't want to be touched. And she felt right by my crotch area * * *." Tr. 10. *See Village of New Lebanon v. Cobb*, 2d Dist. Montgomery No. 11026, 1989 WL 52887, *3 (May 19, 1989).

{¶14} Further, Miller's testimony also indicates that Dendinger was reaching into his pockets while he was standing in his own house to obtain a key that went to a bedroom door in his house. Kelsey's invitation authorized Dendinger to be in Miller and Kelsey's house. *See State v. Berry*, 3d Dist. Hancock No. 5-16-16, 2017-Ohio-1490, ¶ 22-23. However, the fact that Kelsey invited her mother to intervene in a marital dispute did not give Dendinger the right to reach into Miller's pockets. Under these circumstances, a reasonable trier of fact could determine that Dendinger's actions did not further a lawful or reasonable purpose.

{¶15} Thus, Miller's testimony, if believed, sufficiently substantiates the essential elements for the offense of disorderly conduct in violation of R.C. 2917.11(A)(5). After reviewing the evidence in a light most favorable to the

Case No. 13-18-38

prosecution, we conclude that the State introduced sufficient evidence from which a reasonable trier of fact could find the defendant to be guilty of the minor misdemeanor of disorderly conduct. For this reason, Dendinger's first assignment of error is overruled.

*Second Assignment of Error*

**{¶16}** Dendinger reiterates her arguments from her first assignment of error to assert that her conviction is against the manifest weight of the evidence.

Legal Standard

**{¶17}** In a manifest weight analysis, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *Plott*, *supra*, at ¶ 73. Thus, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'**

*State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

**{¶18}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the

witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist. 1995). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

**{¶19}** We herein reincorporate the evidence examined under the first assignment of error and proceed to consider the evidence presented by the Defense. In this case, Dendinger testified about the incident, saying:

> **I'm standing beside him, and all I did was reach over to the bottom part of the pant to—and like felt like this to see if I could feel for the key. It was supposed to be in the short pocket, in the outer pocket. At that time he's like—don't touch my pocket, don't touch my pocket, and pulled away.**

Tr. 33. However, she stated that she "did not at any time put [her] hand inside his pocket." Tr. 34. She then added that she "never, at any time, got near [Miller's] crotch area or anything." Tr. 35. On cross-examination, the prosecutor asked Dendinger what gave her the right to try to take this key. She stated: "I was trying

-10-

to prevent further problems with [Kelsey] and her husband." Tr. 37. She further admitted that she did not live at Miller's house. Tr. 36.

**{¶20}** Deputy Callahan testified that Dendinger, on the day of the incident, indicated that "[s]he didn't hurt him * * *. She was just trying to get the key." Dendinger also told Callahan that "she had grabbed [Miller's] pants pockets." When asked whether Miller had indicated that Dendinger had reached into his pockets, Callahan stated: "I didn't write it in my report, so therefore I'd say no." Tr. 21. Kelsey testified that she had invited her mother to come to the house because she "wanted her to be there for support and witness." Tr. 25. Kelsey, however, did not see her mother patting Miller's pants as Kelsey stated that she was in the bedroom at the time of the incident. Tr. 26, 28-29.

**{¶21}** In this case, the testimony of Dendinger and Miller are in conflict. However, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 124, 489 N.E.2d 277 (1986). After reviewing the record, we conclude that this is not the exceptional case where the evidence weighs heavily against Dendinger's conviction. Thus, this conviction is not against the manifest weight of the evidence. For this reason, Dendinger's second assignment of error is overruled.

*Third Assignment of Error*

**{¶22}** Dendinger argues that the trial judge was biased against the Defense and that she did not, therefore, receive a fair trial.

Legal Standard

**{¶23}** "[A] criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *In re Disqualification of Zmuda*, 149 Ohio St.3d 1241, 2017-Ohio-317, 75 N.E.3d 1255, ¶ 11, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34.

> **Judicial bias has been described by the Supreme Court of Ohio as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."** *State ex rel. Pratt v. Weygandt*, **164 Ohio St. 463 [132 N.E.2d 191] (1956), paragraph four of the syllabus. However, "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions."** *In re Disqualification of George*, **100 Ohio St.3d 1241, 2003-Ohio-5489, [798 N.E.2d 23] ¶ 5. (Citations omitted.)**

*State v. Wieser*, 3d Dist. Allen No. 1-18-15, 2018-Ohio-3619, ¶ 23. "Judicial bias exists if it is directed toward counsel. Indeed, 'the judge who is so hostile to a lawyer as to doom the client to defeat deprives the client of the right to an impartial tribunal.'" *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 65, quoting *Walberg v. Israel*, 766 F.2d 1071, 1077 (C.A.7, 1985).

**{¶24}** However, "[s]harp words spoken by a trial court to counsel do not by themselves establish impermissible bias. There is a 'modicum of quick temper that must be allowed even judges.'" *State v. Sanders*, 92 Ohio St.3d 245, 278, 750 N.E.2d 90 (2001), quoting *United States v. Donato*, 99 F.3d 426, 434 (C.A.D.C. 1996), quoting *Offutt v. United States*, 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Even a "rebuke" issued by a trial judge from the bench is not necessarily evidence of judicial bias. *Id.*

Legal Analysis

**{¶25}** On appeal, Dendinger identifies two instances that allegedly indicate that the trial judge was biased against her attorney, Rocky Ratliff ("Ratliff"). First, Dendinger points to the following colloquy:

> **[Prosecutor]: I'm gonna object as to leading again.**
>
> **[Trial Judge]: Is this like Marion County direct examination? Just kind of curious—**
>
> **[Ratliff]: I don't see the problem as to asking her—**
>
> **[Trial Judge]: Objection Sustained.**

Tr. 26-27. During the course of the trial, the prosecution objected to the Defense's use of leading questions at least four times. Tr. 26, 27, 33. After one of these objections, the trial judge advised defense counsel to "be careful about your examination." Tr. 33. In these comments, the trial court seems to be addressing

defense counsel's repeated use of leading questions. However, these statements do not indicate that the trial judge was hostile to the interests of the Defense.

**{¶26}** Second, the trial judge, at the beginning of issuing his ruling, made the following statement:

> **All right. Mr. Ratliff, I'm gonna address most of my comments to you, because I think you're the one that I want to make sure that I get the point across to.**
>
> **When we have this series of events that we've dealt with in the past, I try to be very sensitive when couples are going through divorce proceedings, because I realize over the years that there can be a lot of shenanigans that go on with people doing all kinds of things. In the 16 years that I've been a Judge, and in the 15 years as a prosecutor before that, I've seen a lot of—what I would consider to be reasonable people doing unreasonable things \* \* \*.**

Tr. 41-42. In context, the trial judge, in these comments, appears to be explaining his rationale to the defense counsel, who was not from the county and was possibly unfamiliar with the trial judge's practices. Defense counsel would be the person who would need to understand this rationale in order to clarify any of his client's points of confusion with the trial court's decision. Further, Dendinger has not demonstrated how this comment amounts to evidence of bias or hostility.

**{¶27}** The two comments identified on appeal do not indicate that the trial judge had "a hostile feeling or spirit of ill will or undue friendship \* \* \* toward" Dendinger or her attorney. *Wieser, supra*, at ¶ 23, quoting *Pratt, supra*, at paragraph four of the syllabus. Further, we also note that this was a bench trial and that no jurors, therefore, could have been influenced by these statements. *See State v. Sayre*,

3d Dist. Marion No. 9-12-25, 2013-Ohio-4108, ¶ 16 (holding that a "trial court must be careful as to any comments it makes that may have an effect upon the jury."). Dendinger has not carried the burden of establishing that the trial judge was biased against her or her attorney in this particular case. For this reason, her third assignment of error is overruled.

*Conclusion*

**{¶28}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Tiffin-Fostoria Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/hls**