[Cite as *State v. Garey*, 2019-Ohio-4525.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ERIC RAY GAREY,

    DEFENDANT-APPELLANT.

CASE NO. 2-19-03

O P I N I O N

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2018-CR-47

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  November 4, 2019**

APPEARANCES:

    *Victoria Bader* **for Appellant**

    *Edwin A. Pierce* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Eric Ray Garey ("Garey") appeals the judgment of the Auglaize County Court of Common Pleas, alleging that his conviction is against the manifest weight of the evidence; that his sentence is not supported by the record; and that the trial court erred in ordering him to pay for one of the alleged victim's court appointed counsel and guardian ad litem fees. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{¶2} Brenda Cheshire ("Cheshire") lives at the Easy Campground. Tr. 153. On August 15, 2016, a child, E.H., approached Cheshire. Tr. 154. E.H. had moved to the Easy Campground with her family in late July of 2016. Tr. 319. She was staying with her mother; her mother's boyfriend, Garey; her sister, T.L.; and her brother in a camper across the street from Cheshire. Tr. 173. Cheshire stated that E.H. was crying and was "hysterical." Tr. 161. E.H. stated that she was afraid that she was pregnant because Garey had rubbed up against her while in bed. Tr. 159-160.

{¶3} Cheshire told E.H. that she needed to tell her mother. Tr. 161. E.H. then called her mother who came and heard E.H.'s story. Tr. 161. As E.H. was speaking to her mother, T.L. stated, "Well, he's [Garey's] done it to me." Tr. 162. Cheshire, who was present for the conversation between E.H. and E.H.'s mother,

stated that T.L. told this to her mother in a "nonchalant" manner. Tr. 162. After E.H. finished talking to her mother, E.H.'s mother called the police. Tr. 162.

{¶4} On April 13, 2017, the State issued an eight-count indictment against Garey. Doc. 1. The first count alleged that Garey committed the offense of gross sexual imposition in violation of R.C. 2907.05(A)(4). T.L. was the alleged victim of this alleged offense. Doc. 30. E.H. was the alleged victim of the remaining seven counts, which included two counts of rape in violation of R.C. 2907.02(A)(1)(b) and five counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). Doc. 30.

{¶5} On October 9, 2018, Garey's jury trial began. Tr. 1. At trial, both E.H. and T.L. testified. Tr. 170, 239. The jury found Garey guilty of the first count of gross sexual imposition with which he had been charged. Doc. 119. T.L. was the victim of this offense. Doc. 1. The jury acquitted Garey of the remaining charges of which E.H. was the alleged victim. Doc. 120-126. Garey appeared for his sentencing hearing on January 16, 2019. Sentencing Tr. 1. On January 17, 2019, the trial court issued its judgment entry of sentencing. Doc. 151. The trial court sentenced Garey to serve sixty months in prison and ordered him to pay for the costs of E.H.'s court appointed counsel and guardian ad litem. Doc. 151, 169.

{¶6} The appellant filed his notice of appeal on February 15, 2019. Doc. 173. On appeal, Garey raises the following assignments of error:

**First Assignment of Error**

**Mr. Garey's conviction for gross sexual imposition was against the manifest weight of the evidence.**

**Second Assignment of Error**

**The trial court erred when it sentenced Eric Garey to the maximum sentence of 60 months for gross sexual imposition, because that sentence is not supported by the record in this case.**

**Third Assignment of Error**

**The trial court erred when it ordered Eric Garey to pay court appointed counsel and guardian ad litem fees associated with the victim's counsel under Marsy's Law.**

*First Assignment of Error*

{¶7} Garey argues that his conviction is against the manifest weight of the evidence because his accuser's testimony was inconsistent and was not credible.

Legal Standard

{¶8} "When 'deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist. 1997). "In a manifest weight analysis, 'the appellate court sits as a "thirteenth juror" * * *.'" *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts "must review the entire record, weigh the evidence

and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

{¶9} "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist.1995). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶10} On appeal, Garey challenges his conviction for one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). This provision reads as follows:

> **(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two**

> **or more other persons to have sexual contact when any of the following applies:**
>
> **(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.**

R.C. 2907.05(A)(4). Thus, the State had to establish that the defendant (1) "[had] sexual contact" (2) with a "person * * * less than thirteen years of age." R.C. 2907.05(A)(4).

## Legal Analysis

{¶11} At trial, T.L. testified that she was born in 2007. Tr. 241, 252. Thus, when the alleged offense happened, T.L. was under the age of thirteen. See R.C. 2907.05(A)(4). Regarding the alleged offense, T.L. testified that she was sitting on a couch with Garey one evening in the house where they lived. Tr. 247. According to T.L., Garey asked her to "rub his d***." Tr. 247. T.L. then stated that Garey took her hand, placed it on his private area over his clothing, and rubbed her hand up and down this area. Tr. 250. T.L. testified that Garey did this for roughly two minutes. Tr. 251. T.L. further testified that Garey then said, "Shh, don't tell anybody." Tr. 215. When asked, T.L. said she did not tell anyone about this incident because she was "scared." Tr. 251.

{¶12} On cross-examination, T.L. stated that she did not tell her mother about this incident because she (T.L.) was afraid that her mother would not believe her story. Tr. 254. When asked why she had this fear, she replied, "Because I do

get in trouble and I did at one point tell lies, but I quit and I was still afraid she wouldn't believe me." Tr. 254. She also could not recall who was in the house at the time of the alleged incident. Tr. 254.

{¶13} The State also called Officer Brian Wilkins ("Officer Wilkins"), who was a deputy at the Auglaize County Sheriff's Office, to testify. Tr. 266. Officer Wilkins testified that he went to Garey's workplace to inform him that certain allegations had been raised against him and that he needed to stay away from E.H. and T.L. Tr. 268. Officer Wilkins stated that, upon hearing this information, Garey's demeanor did not change. Tr. 271.

{¶14} Charla Lauth ("Lauth"), a child abuse investigator at the Auglaize County Department of Job and Family Services, also testified. Tr. 272. She stated that, in April of 2016, E.H. raised allegations that Garey had physically abused her. Tr. 295-296. Lauth began to investigate these allegations in April of 2016. Tr. 296. Lauth concluded her investigation in June of 2016, having determined that the allegations of physical abuse were unsubstantiated. Tr. 296. However, E.H. did not mention any sexual abuse during the course of this investigation. Tr. 296.

{¶15} Lauth testified that it was not unusual that E.H. did not mention the alleged sexual abuse during this earlier investigation. Tr. 298. She also testified that the alleged offense against T.L. occurred after this prior investigation into Garey had been closed. Tr. 298. Lauth stated that E.H. and T.L. indicated that they "were fearful" of Garey at the time that they raised the allegations of physical abuse

against him. Tr. 298. On cross-examination, the Defense asked why E.H. and T.L. were willing to report Garey for physical abuse if they were, in fact, afraid of him. Tr. 298. Lauth again stated that this behavior was "not unusual." Tr. 298-299.

{¶16} Garey also testified in his own defense. He stated that, when Officer Wilkins approached him, he believed that there had been "another false allegation of physical abuse" from E.H. Tr. 321. He testified that he "was stunned" to hear that there were allegations of sexual abuse being raised against him. Tr. 321. Garey stated that he had never touched any of the children in a sexual manner. Tr. 326. He also stated that he was "never really" alone with the children because a babysitter lived with them. Tr. 319.

{¶17} In this case, the testimony of Garey and T.L. are in conflict. However, a conviction is not against the manifest weight of the evidence simply because the testimony presented at trial is in conflict and the jurors chose to believe the State's witnesses. *State v. Valdez*, 3d Dist. Putnam No. 12-17-11, 2018-Ohio-1768, ¶ 11. The facts of this case do not present the exceptional situation in which the evidence weighs heavily against a finding the defendant's conviction. *State v. Dendinger*, 3d Dist. Seneca No. 13-18-38, 2019-Ohio-2158, ¶ 21. After reviewing the evidence in the record, we do not find any indication that the jury lost its way and returned a verdict against the manifest weight of the evidence. Further, the record indicates that Garey's conviction is supported by some competent, credible evidence. Thus, Garey's first assignment of error is overruled.

*Second Assignment of Error*

**{¶18}** Garey challenges his sentence, arguing (1) it is not supported by the record because the presentence investigation ("PSI") contained unprofessional opinions and that the trial court, based on this PSI, improperly weighed the recidivism factors under R.C. 2929.12 and (2) the Defense provided mitigating evidence that supported a minimal prison sentence. We will consider each of these arguments in turn.

Legal Standard

**{¶19}** Under R.C. 2953.08(G)(2), appellate courts may vacate, increase, reduce, or modify a sentence if it "clearly and convincingly finds" (1) that the record does not support the findings made by the trial court under R.C. 2929.13, R.C. 2929.14, or R.C. 2929.20; or (2) that the sentence is "otherwise contrary to law." R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

> **Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.**

*State v. Gamache*, 3d Dist. Allen No. 1-18-26, 2018-Ohio-4170, ¶ 6, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, at paragraph three of the syllabus (1954).

**{¶20}** "[T]rial courts have full discretion to impose any prison sentence within the statutory range as long as they consider the purposes and principles of felony sentencing and the seriousness and recidivism factors." *State v. Close*, 3d Dist. Logan No. 8-17-45, 2018-Ohio-2244, ¶ 5.

> **R.C. 2929.11 provides that sentences for a felony shall be guided by the overriding purposes of felony sentencing: 'to protect the public from future crime by the offender and others and to punish the offender.' R.C. 2929.11(A). In order to comply with those purposes and principles, R.C. 2929.12 instructs a trial court to consider various factors set forth in the statute relating to the seriousness of the conduct and to the likelihood of the offender's recidivism. R.C. 2929.12(A) through (D). In addition, a trial court may consider any other factors that are relevant to achieving the purposes and principles of sentencing. R.C. 2929.12(E).**

*Id*., quoting *State v. Alselami*, 3d Dist. Hancock No. 5-11-31, 2012-Ohio-987, ¶ 21.

R.C. 2929.12(E) reads as follows:

> **(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:**
>
> **(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.**
>
> **(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.**
> **(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.**
>
> **(4) The offense was committed under circumstances not likely to recur.**
>
> **(5) The offender shows genuine remorse for the offense.**

R.C. 2929.12(E).

**{¶21}** "Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the sentencing court is not required to '[s]tate on the record that it considered the statutory criteria or discuss[ed] them.'" *State v. Witt*, 3d Dist. Auglaize No. 2-17-09, 2017-Ohio-7441, ¶ 10, quoting *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 32. "A trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." *State v. Nienberg*, 3d Dist. Putnam Nos. 12-16-15, 12-16-16, 2017-Ohio-2920, ¶ 12, quoting *Maggette, supra*, at ¶ 32.

Legal Analysis

**{¶22}** In his first argument under this assignment of error, Garey points to several statements made by the investigator in the PSI. Garey argues that these statements were unprofessional and "*may* have affected the [trial] court's sentencing decision." (Emphasis added.) Appellant's Brief, 10.

**{¶23}** We begin by noting the speculative nature of Garey's argument. He does not offer any evidence that indicates that the trial court was, in fact, swayed by these allegedly unprofessional remarks in the PSI. Further, "[j]udges, unlike juries, are presumed to know the law. Judges are trained and expected to disregard any extraneous influences in deliberations." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 68, quoting *State v. Davis*, 63 Ohio St.3d 44, 48,

584 N.E.2d 1192 (1992). *See State v. Green*, 90 Ohio St.3d 352, 365, 738 N.E.2d 1208 (2000) (holding that "judges can normally be presumed not to have relied upon such improper expressions of opinion."). Garey has not identified any evidence that would cause us to dispense with this presumption.

{¶24} As to the recidivism factors, the judgment entry of sentencing states that the trial court "balanced the seriousness and recidivism factors under Ohio Revised Code § 2929.12." Doc. 151. At the hearing, the trial court referenced Garey's prior criminal history. Garey had five different juvenile offenses on his record that were committed across a four-year period of time. PSI. *See* R.C. 2929.12(E)(1). As an adult, Garey had convictions for disorderly conduct, criminal mischief, assault, drug trafficking, battery and domestic violence. PSI. *See* R.C. 2929.12(E)(2). Garey also had community control violations on his record. PSI. *See* R.C. 2929.12(E)(2). Prior to the instant offense, Garey's most recent conviction came in 2015. See R.C. 2929.12(E)(3).

{¶25} At the sentencing hearing, the trial court detailed Garey's behavior while he was in jail. Sentencing Tr. 15. The trial judge said,

> **After they restrained a Jeffrey Hudnall and removed him from the max unit, Garey began dumping water out of his grub hole, began kicking his door as he yelled that they had taken his brother. He was then escorted to an intake cell, placed on close watch. Garey tells Hudnall if he gets sixty-two (62) years he's gonna punch CO Miller in the trachea. On October 3rd, Garey refuses to lock down and once escorted to his cell by CO's he begins kicking his door and he threw his lunch on the floor, smearing food on his cell door window; threatened if he got found**

**guilty at trial he'd be causing a lot of problems and tells CO's they haven't seen anything yet. And then there's been other matters since October 22 * * *.**

Sentencing Tr. 16. Thus, after reviewing the transcript of the sentencing hearing, we cannot conclude that the trial court improperly weighed the recidivism factors in R.C. 2929.12(E).

{¶26} In his second argument under this assignment of error, Garey argues that the trial court erred in failing to consider the mitigating information that was presented by the Defense at the sentencing hearing. The Defense argued that Garey was unlikely to commit these offenses again because he was not going to be near these children in the future. The Defense also argued that Garey's criminal history did not include violations of court orders. Based on this mitigating evidence, Garey argues that the trial court erred in failing to give him a more lenient sentence.

{¶27} The transcript of the sentencing hearing indicates that the trial court heard this mitigating evidence. However, the trial court is not required to impose a more lenient sentence merely because the Defense argued that there was some mitigating evidence in this case. *See State v. Steger*, 12th Dist. Butler No. CA2016-03-059, 2016-Ohio-7908, ¶ 18 (holding that a "trial court, in imposing a sentence, determines the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances."). "Ultimately, '[a] sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12,' and here, the trial court afforded more weight to the aggravating

factors presented than to the mitigating factors." *State v. Buell*, 3d Dist. Crawford No. 3-17-14, 2018-Ohio-2140, ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, 960 N.E.2d 1042, ¶ 18 (6th Dist.).

**{¶28}** After examining the evidence in the record, we do not find any indication that the trial court erred in balancing the recidivism factors in R.C. 2929.12(E). *See State v. Brooks*, 11th Dist. Trumbull No. 2015-T-0111, 2016-Ohio-4743. While Garey argued that the trial court should have given a more lenient sentence because of the mitigating factors, the trial court apparently found the recidivism and seriousness factors to outweigh the Defense's arguments. Thus, we conclude that this sentence is not clearly and convincingly contrary to law. For this reason, Garey's second assignment of error is overruled.

### Third Assignment of Error

**{¶29}** Garey argues that the trial court erred in ordering him to pay for E.H.'s appointed counsel and guardian ad litem fees, alleging that this action is not authorized by law.

### Legal Standard

**{¶30}** R.C. 2947.23(A)(1)(a) governs the judgment for costs and fees in criminal cases and reads, in its relevant part, as follows:

> **In all criminal cases, including violations of ordinances, the judge or magistrate shall include *in the sentence* the costs of prosecution * * * and render a judgment against the defendant for such costs. * * ***

(Emphasis added.) R.C. 2947.23(A)(1)(a). "[T]here is no authority for a court to assess costs against a defendant who has not been sentenced, absent an agreement otherwise between the parties." *See Cuyahoga Falls v. Coup-Peterson*, 124 Ohio App.3d 716, 717, 707 N.E.2d 545, 546 (9th Dist. 1997). Thus, "court costs may only [be] assessed if a defendant is actually convicted and sentenced, * * * assuming that no agreement has been entered into otherwise." *In re Graham*, 7th Dist. Mahoning No. 02CA67, 2002-Ohio-6615, ¶ 12. If a defendant is assessed for court costs in the absence of a conviction, that defendant is "deprive[d] * * * of property without the due process of law [as] guaranteed by the Fifth Amendment to the United States Constitution." *State v. Posey*, 135 Ohio App.3d 751, 755, 735 N.E.2d 903, 906 (9th Dist. 1999).

Legal Analysis

{¶31} In this case, the trial court appointed an attorney and guardian ad litem for E.H. but not for T.L. Doc. 80. On February 1, 2019, the trial court ordered Garey to pay court costs that totaled $7,352.37. Doc. 169. Of this total amount, the cost of the services provided to E.H. by her guardian ad litem amounted to $2,041.04. Doc. 169. The cost of the services provided to E.H. by her court appointed counsel amounted to $2,490.00. Doc. 169. Both the State and Garey agree that the costs of E.H.'s attorney and guardian ad litem should not have been assessed to Garey.

**{¶32}** However, the State and the appellant provide different rationales to support this conclusion. The State argues that these fees should not have been assessed to Garey because he was acquitted of all of the charges that had been alleged by E.H. Garey, on the other hand, argues that he should not have been assessed these charges because Ohio law does not authorize courts to assess the defendants for the costs of an alleged victim's attorney or guardian ad litem. We will begin by considering the State's justification for reversing the trial court's assessment of E.H.'s attorney and guardian ad litem fees to Garey.

**{¶33}** In evaluating the State's argument, we find the facts of *State v. Powers* to be instructive. *State v. Powers*, 117 Ohio App.3d 124, 126, 690 N.E.2d 32 (6th Dist. 1996). In that case, the defendant, William Powers ("Powers") was charged with wanton disregard of safety on highways, menacing, and assault. *Id*. at 126. The charges of menacing and assault were tried before a jury. *Id*. The charge of wanton disregard of safety on highways was tried to the bench. *Id*. While the jury acquitted Powers of menacing and assault, the trial judge found Powers guilty of wanton disregard of safety on highway. *Id*. The trial court then assessed the costs of the jury to Powers at sentencing. *Id*. at 128. On appeal, the Sixth District held that the "costs of prosecution, including jury fees, can be assessed against a defendant only if the state is successful." *Id*. The Sixth District then reversed the trial court, concluding that the defendant could not be assessed for the costs of the

jury because he was acquitted of all of the charges that had been tried before the jury. *Id.*

{¶34} In the case before this Court, the costs of E.H.'s guardian ad litem and court appointed attorney represent expenses that were incurred exclusively in the process of prosecuting Garey on charges for which he was ultimately acquitted. As with the costs of the jury in *Powers*, Garey cannot be assessed for expenses that are generated exclusively by the prosecution of charges that do not yield convictions. Garey was not convicted of the criminal offenses that were alleged by E.H. Thus, he cannot be assessed for any of the costs of the attorney and guardian ad litem services that were utilized only by E.H.

{¶35} The State's argument provides adequate grounds to resolve this issue. We need not reach the issue of whether Ohio courts have the legal authority to assess criminal defendants for the costs of a victim's court appointed attorney or guardian ad litem because court costs that are assessed to a criminal defendant must be founded on a conviction. In this case, there are no convictions associated with these challenged court costs. Garey's third assignment of error is sustained. We remand this case for a reassessment of the court costs charged to Garey.

*Conclusion*

{¶36} Having found no error prejudicial to the appellant in the particulars assigned and argued in his first and second assignments of error, the judgment of the Auglaize County Court of Common Pleas is affirmed as to these issues. Having

-17-

Case No. 2-19-03

found error prejudicial to the appellant in the particulars assigned and argued in the third assignment of error, the judgment of the Auglaize County Court of Common Pleas is reversed as to this issue. This cause is remanded for further proceedings consistent with this opinion.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/hls**